## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-03065-MEH

ROCKY MOUNTAIN WILD, INC., a Colorado non-profit corporation;

    Plaintiff,

    v.

UNITED STATES FOREST SERVICE, a federal agency;
UNITED STATES DEPARTMENT OF AGRICULTURE, a federal agency;

    Defendants.

_____

## RESPONSE TO MOTION RE FREEDOM OF INFORMATION ACT RELEASE OF DOCUMENTS

_____

Rocky Mountain Wild ("RMW"), through Counsel, responds in opposition to the Federal Agencies' Motion seeking to "claw back" documents released by the Regional Forester pursuant to the Freedom of Information Act ("FOIA"), with no prior oversight or review by agency counsel. ECF No. 34.  The Motion is without basis in fact or law, and must be denied.

### Background

The underlying FOIA request was received by the Forest Service on July 20, 2018. ECF No. 1 at 1.  The FOIA request sought information to inform RMW's participation in ongoing administrative proceedings involving the Village at Wolf Creek. ECF No. 1 at ¶¶2, 6.  As is the agency practice when responding to RMW's FOIA requests, the Forest Service disregarded the 20 working day deadline to make a determination on the FOIA request, which expired on August 16, 2018. 5 U.S.C. § 552(a)(6)(A)(i).  The ability to participate in the administrative proceeding closed on September 4, 2018, and the subject matter of the request is now being litigated in two

related cases. *Rocky Mountain Wild v. Dallas*, 19-cv-01512-REB (challenge to 2019 decision); *see also Rocky Mountain Wild v. Dalla*s, 15-cv-01342-JLK at ECF No. 113 (exhibits 2-5 involve records disclosed via the rolling productions).

Only when commanded by this Court has the Forest Service carried out its FOIA duties, and began disclosing documents identified by its searches on March 7, 2017. ECF No. 20.  To date, approximately 34,000 pages of agency records have been produced. Ex. 1 (cover letter for ninth response to control number 2018-FS-RW-05258-F).  The Forest Service unilaterally sought to create a second FOIA request by assigning a second control number 2018-FS-R2-05942-F to bifurcate those aspects of the request involving previous litigation. ECF No. 1 at ¶20 *citing* ECF No. 1-4. The Forest Service has not sent any letter indicating any progress on FOIA production or search pursuant to 2018-FS-R2-05942-F. The Forest Service bifurcation was used to instruct agency personnel to exclude responsive documents that may include reference to litigation from search and production, instead of treating them as potentially subject to a FOIA exemption. Ex. 2 at WC_FOIA_009344 (" Please be aware we are in the process of excluding any communications from November 20, 2014 to the present regarding the ongoing law suit, so please do not provide any of these documents.").  The Forest Service has provided no letter or otherwise informed RMW that the agency has abandoned the arbitrary bifurcation.

Nevertheless, numerous documents have been published to the internet that were produced by unidentified persons and contain information that was casually circulated around the agency, thereby disclosing aspects of the Forest Service litigation strategy. *See e.g*. Ex. 3; *see also* http://www.friendsofwolfcreek.org/current-status/.  On March 6, 2019, the Forest Service appears to have conducted a second search of a limited number of persons, but made no clarification to ensure any persons include records regarding the previously excluded records

involving the lawsuit.  Ex. 4 at 3WC_FOIA_009565. The Forest Service provided no evidence

from the person who produced the agency records the agency seeks to recall, and instead, uses a

declaration to assert that some agency attorney noticed the disclosures after the FOIA release

was provided to RMW and posted to the internet.  ECF No. 34-1 at 13.

  The Forest Service has engaged in a pattern of delay and obfuscation when it comes to

FOIA requests focused on the agency's handling of access requests involving the Village at Wolf

Creek. *Colorado Wild v. Clark*, 05-cv-01173-JLK-DW; *RMW v. Forest Service*, 14-cv-02496-

WYD-KMT (D. Colo 2014), and *RMW v. Forest Service*, 15-cv-00127-WJM-CBS.  The

underlying merits cases have involved substantiated allegations of bias and undue influence

against agency personnel, often supported by persons within the agency. *Id. accord Colo. Wild,*

*Inc. v. U.S. Forest Serv*., Civil Action No. 06-CV-02089-JLK-DLW, 2007 U.S. Dist. LEXIS

83638, at *9 (D. Colo. Nov. 1, 2007) (detailing document destruction and withholding from the

administrative record). The Forest Service has been pressured through various channels that

RMW gains information about during FOIA litigation, which often turns on Office of General

Counsel Kenneth Capps apparent role as a direct conduit from the developer to receptive agency

personnel about the subject matter of the litigation. *See e.g* Ex. 5, Ex. 6 (emails from developer

attorneys to Kenneth Capps).

  Importantly, one of the persons copied in the email - Forest Service employee Tom

Malecek - has been a particularly bad actor in this long-running saga.  For example, in one of the

most recent Wolf Creek FOIA cases, searches were not conducted, and the Court required a new

search based on "several responsive documents that should have been disclosed, but were not

disclosed were those that 'involved Tom Malecek and Cambria Armstrong.'" *Rocky Mt. Wild,*

*Inc. v. United States Forest Serv.*, 138 F. Supp. 3d 1216, 1222 (D. Colo. 2015).  Mr. Malecek

was implicated in the failure to produce documents involving a Special Use Permit approval

involved in a closely related FOIA request and administrative record production.  *See   Colo.*

*Wild, Inc. v. U.S. Forest Serv.*, 2007 U.S. Dist. LEXIS 83638, at *9 (D. Colo. Nov. 1, 2007).

Mr. Malecek regularly withheld and took steps to shield agency records from persons

processing the FOIA requests.  In the underlying matter, he stated, "I consider most of my

internal correspondence with the proponent to be internal workings, just as if someone asked for

our work on the DEIS before it was complete, and thus not subject to FOIA." Ex. 7 (email

WC_FOIA_ACP_1071). Mr. Malecek was informed that any withholding required careful

compliance with FOIA, including review by "[Office of General Counsel] prior to release." *Id*.

Mr. Malecek did not heed the warning in March 2012, as confirmed by an August 2012 email

that again documents his efforts to blatantly violate FOIA and obstruct access to agency records

by directing other agency personnel to destroy Mr Malecek's email. Ex. 8 (C0009695 "Dan

[Dallas)'s main concern wasn't the letter, but the emails around the letter that might be a little

damaging in the event they are not all deleted in case we get a foia…remember we are

swimming with sharks and need to keep emails from even the remote appearance of whatever, so

make sure you burn this once read!").  The referenced "sharks" was clearly a reference to Rocky

Mountain Wild, its organizational allies, and its attorneys.

As set out in the excerpt from the formal objections filed with the agency on the latest

approval for access to construct the proposed Village at Wolf Creek (Ex. 9), the Forest Service

was engaged in obfuscation and concealment of LMJV demands made in late 2017 during

discussions involving the Circuit Mediator. Ex.  10; *see also* 5, 6 .  It appears that a Forest

Service team, including Mr. Malecek and Mr. Capps, was working closely with LMJV outside

4

the litigation protocols, and panicked in May 2018 when Mr. Stills sought the documents involving the covert agency processing of the LMJV demand made in October 2017 (Ex. 5) for expanded access. Ex. 11 at 3WC_FOIA_015731 - 42 (subsequent redaction at 3WC_FOIA_015740).

The email string drew the immediate attention of Mr. Stills, who read it in his reviews conducted on May 17 and 20, 2019.   The arbitrary redaction of the body of Mr. Stills' emails was also noted, and did not stand out from the careless and casual approach to redactions by the Forest Service.  *Id.* at 3WC_FOIA_015733. The seemingly random withholding and release was unremarkable in context of the present controversy and in light of the agency's common practice of labeling non-privileged emails and records with an unwarranted confidentiality caption and releasing documents that might seem to enjoy privilege under other circumstances.  *See e.g.* https://drive.google.com/drive/folders/15eap0rZ2aInxEm2_rxDG_aVlNXqQ-UAd  (web posting of FOIA release) at 3WC_FOIA_015815, 3WC_FOIA_015829 - 33, CW_FOIA_017009, 3CW_FOIA_017023, 3CW_FOIA_017052.

During the litigation, when asked to produce documents in searchable pdf format in accordance with FOIA and the ECF filing rules, the Forest Service refused.  Ex. 11 at 1 ("I don't believe the agency is required to produce the documents in OCR-searchable format under FOIA or ECF rules."). The government specifically asserted that the Regional Forester's FOIA disclosures were not part of the judicial proceedings, and did not require compliance with Federal Rules or the ECF Rules regarding searchable copies. *Id*. ("I don't believe ECF or e-discovery rules apply here, where the documents are being produced in response to a FOIA request, not as discovery or court filings.").

5

After the FOIA documents were posted to the internet on May 17, 2019 (Ex. 3 (Screenshot of Facebook Page), an unnamed agency attorney somehow became aware of emails that involve the agency's description of ongoing litigation. ECF No. 34-1 at ¶13. There is no evidence to suggest why the unnamed agency attorney was carrying out the review after, not before, the documents were released. There is no indication of how or why the unnamed attorney reviewed these documents. There is no indication of how the documents came into the unnamed attorney's possession.  It is quite plausible that the agency attorney was reviewing documents published to the Friends of Wolf Creek Website, and was alerted to the content by a person from outside the agency altogether. *See* ECF No 34-4 at 3 (LMJV agent's email notifying Mr. Malecek of contents of Facebook page).  The FOIA response contains numerous similar emails describing the litigation that have been released pursuant to FOIA without redaction, and published to the internet. *See e.g.* http://www.friendsofwolfcreek.org/current-status/. A full posting of the agency records remains accessible on the Friends of Wolf Creek the website, although the Sixth Installment was replaced temporarily, pending the result of the present Motion.[1]

On the current record, unnamed agency personnel processed agency records at an unknown time, without the aid of agency counsel, for release by the Regional Forester, without preparing any privilege log or *Vaughn* index for review before the records were released.  ECF No. 34-1.  Mr. Condit, Acting Assistant Director, Strategic Planning, signed a declaration

---

[1]On or about May 23, 2019, upon receipt of Ms. Bobet's email, undersigned counsel Stills removed the Sixth Installment from a shared, publicly accessible Google Drive Folder used by Energy and Conservation law to post FOIA Responses. https://drive.google.com/drive/folders/1l3zYmApbe5cOz7gTyTKTe-bbGA9_lZYz. A new version of Release 6 was reposted for use until the present motion is resolved. https://drive.google.com/drive/folders/1wb0tF0URT7Su43x-d-b6q0hZelQmvxTI

purporting to describe the Forest Service efforts, even though he was only assigned to the FOIA production team on May 6, 2019. *Id*. at ¶3.  Mr. Condit alleges that the review team is currently staffed by five unnamed persons, an unstated number "with limited prior FOIA experience" and none with any stated knowledge of the underlying subject matter. *Id*. at ¶7.

Instead of an attorney, Mr. Condit's second-hand account states the agency relied on a "paralegal" and some other person to make determinations on the FOIA Exemptions. *Id*. at ¶ 8. Mr. Condit did not reveal the paralegal's name or qualifications or identify the other person.  A vaguely described "record of those withholdings or redactions and the applicable exemption" was purportedly made, but was not offered as evidence to support the pending motion.  *Id*. at ¶9. It is reasonable to infer that the 'record' prepared by unnamed persons and referenced by Mr. Condit does not contain the information normally found in a privilege log or *Vaughn* index, otherwise it would have been proffered to meet the agency burden.  *Id*.

Again, there are evidentiary burdens placed on the agency asserting a FOIA Exemption and/or seeking to categorize a discovery document as inadvertently released, but Mr. Condit's account is second hand. Although it would be appropriate to summarily reject or to give Mr. Condit's account little weight, it would also be appropriate to bring the unnamed Solicitor, review team, and persons with direct knowledge of the subject matter of the emails into Court to provide direct and admissible testimony about the actual FOIA release, subject to cross-examination and the Court's assessment of credibility.

## Applicable Law

The posture of this case does not involve discovery or other litigation devices.  In fact, the Forest Service has produced the records based on the assertion that ECF and e-discovery parameters do not apply.[2]

The Forest Service asserts it took reasonable means in processing the FOIA response, but provides no authority by which to measure that bare assertion.  Two lines of authority are informative.  During litigation, the agency must provide evidence to support its withholdings, which must be sufficient to satisfy Plaintiff and if necessary, the Court, that the withholdings comply with FOIA. *Anderson v. Department of Health and Human Services*, 907 F.2d 936, 941 (10th Cir. 1990) ("The district court must determine whether all of the requested materials fall within an exemption to the FOIA and may not simply conclude that an entire file or body of information is protected without consideration of the component parts.").  The accepted means to establish and assert a withholding is through preparation of a *Vaughn* index.  *Id*.

The *Vaughn* index is one component of the FOIA litigation record developed for the district court to determine, *de novo*, whether or not the withholding of responsive records is justified by one of the nine FOIA exemption. *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1226 (10th Cir. 2007) (the federal agency resisting disclosure in response to a FOIA request, bears the burden of justifying nondisclosure).

---

[2]The unlawful, arbitrary, and capricious production of agency records as unsearchable pdf images instead of searchable pdf files will be taken up in due course.  Ex. 11 at 2 *quoting* 5 U.S.C. § 552 (a)(3)(B) ("an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format.") *quoted by*. The FOIA Request asked for documents production in searchable pdf format. ECF No. 1-at 3. ("The requesting parties' request information be provided in OCR searchable PDF Format.").

The Forest Service procedure for establishing a withholding involves a standard form (with reference to Forest Service Handbook 6209.13) that directs the agency persons likely to possess responsive records to provide the required information for review by FOIA Officers and agency attorneys. Ex. 12-14.  The questionnaire involves a certification form that aids government attorneys in determining whether responsive agency records identified during the search should be withheld. Ex. 14 at 3WC_FOIA_016201 (form listing Office of General Counsel attorney Mr. Capps among the attorneys conducting 2016 exemption review).

FOIA Exemption 5 allows an agency to withhold a narrow range of records involving the agency deliberative process and the attorney/client privileges of agency persons legitimately seeking legal advice. *Trentadue*, 501 F.3d 1215, 1229 (10th Cir. 2007). The 10th Circuit has confirmed that Exemption 5 is to be narrowly construed and applied and has "[held] that factual materials are not privileged under Exemption 5 unless: (1) they are inextricably intertwined with deliberative materials, [..], or (2) their disclosure would reveal deliberative material [...]." *Id* at 1229, *citations omitted*. The burden is on the agency to provide evidence to support the withholding. *Id*.

Similarly, Exemption 6 applies to information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  There is no mention of emails or alternate phone numbers used for work purposes.  The plain language of FOIA does not support the asserted withholding.

The Supreme Court has determined that disclosures pursuant to FOIA are distinct from discovery disclosures in a judicial or agency proceeding and are not governed by the same

standards.  "It must be remembered that once there is disclosure, the information belongs to the general public.  There is no mechanism under FOIA for a protective order […] proscribing its general dissemination." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004). The Forest Service has taken the position in other litigation that "FOIA does not permit selective disclosure of information only to certain parties." *Maricopa Audubon Soc'y v. United States Forest Serv.*, 108 F.3d 1082, 1088 (9th Cir. 1997).  The Ninth Circuit sided with the Forest Service and denied the FOIA litigant's request for production pursuant to a protective order because once disclosed to the FOIA litigant, "it must also be made available to all members of the public who request it." *Id*.

In the discovery context, there are a wide array of standards and tools that are not available to the agency or the Court in FOIA matters, such as protective orders and claw-back agreements.  "Inadvertently" disclosed records that have not been disseminated can be called back in the context of discovery.  Inadvertence turns on "whether the party producing privileged material has been so careless as to surrender any claim that it has taken reasonable steps to ensure confidentiality." *SEC v. Cassano,* 189 F.R.D. 83, 85 n.4 (S.D.N.Y. 1999). The following five factors are commonly used to determine "whether an inadvertent disclosure of documents effects a waiver of the attorney-client privilege" during discovery: 1) the reasonableness of the precautions taken to prevent inadvertent disclosure; 2) the time taken to rectify the error; 3) the scope of discovery; 4) the extent of disclosure; and 5) the overriding issue of fairness. *Wallace v. Beech Aircraft Corp.*, 179 F.R.D. 313, 314 (D. Kan. 1998) citing *Monarch Cement Company v. Lone Star Industries, Inc.*, 132 F.R.D. 558 (D. Kan. 1990)(citing *Hartford Fire Insurance Co. v. Garvey*, 109 F.R.D. 323 (N.D. 1985).

The question of "inadvertence" is a threshold matter of fact that the agency must establish by demonstrating the use of reasonable precautions.  *Id.*  Reasonable precaution "requires the preparation and production of a privilege log." *Kitevski v. City of N.Y.*, 2006 U.S. Dist. LEXIS 11017, at *12-13 (S.D.N.Y. Mar. 16, 2006) (citations omitted).  In order to preserve a privilege claim, a party "must conduct a privilege review prior to document production." *Ciba-Geigy Corp. v. Sandoz Ltd.*, 916 F.Supp. 404, 412 (D.N.J. 1995); *see also United States Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.*, 630 F. Supp. 2d 1332 (M.D. Fla. 2007) (privilege waived where attorney who sent out the production never reviewed the documents); *SEC v. Cassano*, 189 F.R.D. 83, 86 (S.D.N.Y. 1999) (attorney-client privilege waived where party makes a deliberate decision to produce without looking at the material produced beforehand).

Even if inadvertence was not precluded by Supreme Court precedent confirming that a FOIA production makes a document public and precludes the Courts from restricting use of FOIA-produced records, the agency carries the burden to establish evidence to support "inadvertent" production as that legal term is used in the discovery context.  *Id.*

<u>**Argument**</u>

**1.     Publication Precludes Relief Requested**

The Motion identifies no case allowing an agency to call back FOIA documents that have already been reviewed and published to the internet.  Moreover, Defendants did not dispute the legal authority in the April 26, 2019 letter that precludes use of a protective order. ECF No. 34-2 at 4-5.  Yet, the Forest Service continued to process the FOIA responses without the necessary care required to establish, assert, and protect a claim of government secrecy pursuant to a recognized FOIA Exemption or well-established discovery rules.  The Forest Service did not

11

conduct attorney review or use even the most basic protections that flow from preparing a *Vaughn* index.  The failure to use reasonable care precludes the claim of "inadvertence."  Even if the careless and casual production of documents were considered "inadvertent" under the legal standard, several other bases preclude the request for Plaintiff to destroy agency records that were lawfully published to the internet, and broadcast through a Facebook post, on May 17, 2019. Ex. 3 .

The cases that do address information that has already been published to the web and thereby placed into the public domain, compel disclosure.

> Many of the other cases on which PLN relies for its argument that the public domain doctrine should apply here, including decisions of this court, are inapposite. Rather than concluding records are exempt but under the public domain doctrine must be released anyway, those cases recognize that in some circumstances the public availability of information renders the exemption inapplicable at the outset.

*Prison Legal News v. Exec. Office for United States Attys.*, 628 F.3d 1243, 1252 n.6 (10th Cir. 2011) (citations omitted).  The present case can be readily resolved by the recognition that the documents lost any basis for withholding as a matter of fact because they were placed into the public domain by the May 17, 2019 publication to the internet (*Id*.), and as a matter of law by the District Forester's FOIA production itself. *Favish*, 541 U.S. 157, 174 (2004) ("once there is [FOIA] disclosure, the information belongs to the general public.  There is no mechanism under FOIA for a protective order [...] proscribing its general dissemination.").

The Court's analysis need not proceed further, and the Motion may be denied.

## 2.    Discovery Rules do not Apply

The Supreme Court has determined that disclosures pursuant to FOIA are distinct from discovery disclosures in a judicial or agency proceeding and are not governed by the same standards.  "There is no mechanism under FOIA for a protective order [...] proscribing its

general dissemination." *Favish*, 541 U.S. 157, 174 (2004).  It is well-established that once

disclosed to the FOIA litigant, "it must also be made available to all members of the public who

request it." *Id. see also Maricopa Audubon Soc'y v. United States Forest Serv.*, 108 F.3d 1082,

1088 (9th Cir. 1997).

The Forest Service argued throughout this proceeding that discovery rules do not apply to

its FOIA disclosures.  Assistant U.S. Attorney Jane Bobet argued that "I don't believe ECF or e-

discovery rules apply here, where the documents are being produced in response to a FOIA

request, not as discovery or court filings." Ex. 11at 1.  Neither the discovery provisions nor the

Rules of Evidence were recognized by the agency making the FOIA disclosures, which is

consistent with binding precedent preventing restrictions on further use and dissemination of the

documents produced by the Regional Director pursuant to FOIA.  *Favish*, 541 U.S. 157, 174

(2004).

Yet, when the litigation rules provided protection, the government switched course and

argued that discovery rules control this litigation. Should the court agree with the agency's

current position on discovery, Plaintiff anticipates pursuing a request to conduct discovery into

the agency's handling of the underlying records and its FOIA procedures to support claims that

the Forest Service withholdings involve conduct that should be referred to the Special Counsel

for remedy[3], or remedied directly by this Court pursuant to the equitable powers to grant relief

that the Forest Service previously argued the Court lacks. ECF No. 19 (Motion to Dismiss) at 13

- 15. *mooted by* ECF No. 22 at 2.

---

[3] Plaintiff respectfully submits that discovery may not be required should the Court find that
there is sufficient evidence already taken to establish circumstances indicating arbitrary and
capricious conduct associated with the currently disputed withholding.

3.      **To the Extent Discovery Rules Apply, the Disclosure was not "Inadvertent"**

The FOIA disclosure was required by statute regardless of any judicial proceeding and the careless privilege review that is described by Mr. Condit's declaration precludes claims of "inadvertent disclosure" during FOIA litigation.

In order to preserve a privilege claim in an adjudication that involves discovery, a party "must conduct a privilege review prior to document production." *Ciba-Geigy Corp. v. Sandoz Ltd*., 916 F.Supp. 404, 412 (D.N.J. 1995); *see also United States Fid. & Guar. Co. v. Liberty Surplus Ins. Corp*., 630 F. Supp. 2d 1332 (M.D. Fla. 2007) (privilege waived where attorney who sent out the production never reviewed the documents); *SEC v. Cassano*, 189 F.R.D. 83, 86 (S.D.N.Y. 1999) (attorney-client privilege waived where party makes a deliberate decision to produce without looking at the material produced beforehand).  "[I]f the privilege holder fails to pursue all reasonable means of preserving the confidentiality of the privileged matter," he waives the privilege. *Id.*; *Gomez v. Vernon*, 255 F.3d 1118, 1131 (9th Cir. 2001) ("Inadvertent disclosure can also result in a waiver of the privilege . . . if the privilege holder fails to pursue all reasonable means of preserving the confidentiality of the privileged matter."); *United States v. Deloitte LLP*, 610 F.3d 129, 140, 391 U.S. App. D.C. 318 (D.C. Cir. 2010) ("disclosing work product to a third party can waive protection if "such disclosure, under the circumstances, is inconsistent with the maintenance of secrecy from the disclosing party's adversary").

As stated below, maintaining confidentiality is a *prima facie* element of Exemption 5 that the Motion does not address, and therefore the Exemption does not attach and there is nothing to waive.  Mr. Malecek is not a named defendant in the merits lawsuits, and despite his long-running and questionable conduct, the Motion does not provide any proper purpose or justification for Mr. Malecek to have been kept apprised of the course of the litigation.

Moreover, the FOIA responses are replete with similar updates traded among agency personnel that were not treated as privileged, likely because they were shared beyond those persons who need to know and/or the information in the records was already shared with LMJV. Ex. 5-6, 8-10, *see e.g.* https://drive.google.com/drive/folders/15eap0rZ2aInxEm2_rxDG_aVlNXqQ-UAd (web posting of FOIA release) at 3WC_FOIA_015815, 3WC_FOIA_015829 - 33, CW_FOIA_017009, 3CW_FOIA_017023, 3CW_FOIA_017052.

The government has asserted "inadvertence," which does not carry the plain language meaning of a mere mistake, which is how the term is used in the Motion.  Indeed, the Motion ignores the legal elements of "inadvertence" altogether, perhaps in recognition that the standard cannot be met by the haphazard approach the Forest Service used to process the FOIA Request. In the discovery context, for a disclosure to be "inadvertent" the party must have done its diligence, which includes preparation of a privilege log to ensure all elements of the privilege apply, and that the privilege has not been waived.  As set forth below in more detail the agency did not prepare a *Vaughn* index to determine whether the elements of any FOIA Exemption could be applied, and whether such Exemption had been waived.  The Regional Forester's casual approach, with agency attorney's review coming after disclosure, confirms the disclosure is more properly termed purposeful and careless, and does not qualify for the protections that "inadvertent" discovery disclosures enjoy.

The standards were applied to records involving agency attorneys in *SEC v. Cassano*, 189 F.R.D. 83 (S.D.N.Y. 1999), and the court found inadvertence is a high standard requiring a high level of care.  The court noted that "the SEC attorney authorized production of this document, sight unseen. Any other precautions that were taken, and there certainly were some, fade into

15

insignificance in the face of such carelessness. *Id.* at 86. The *Cassano* Court further found that "[a] deliberate decision was made to produce it without looking at it. Thus, this factor cuts even more strongly in defendants' favor…" *Id.* The Court concluded, "There is no reason why its carelessness should be disregarded. Moreover, this document has been distributed to a number of others… [and] this bell…would be very difficult to unring." *Id.* Here, the carelessness of the disclosure is coupled with the distribution, thereby making make retraction of the records both unlawful under FOIA and untenable in light of discovery rules.

Here, the admonitions in *Cassano* should be applied with equal vigor. Had the government attorneys carefully and timely reviewed the materials and prepared a *Vaughn* index before the Regional Forester sent the documents to Rocky Mountain Wild, the documents would presumably have been scrutinized and, if appropriate, withheld. Similarly, although the Forest Service is in the U.S. Department of Agriculture, the analogous review by the Office of Solicitor is enshrined into Department of the Interior FOIA regulations. 43 C.F.R. §§ 2.23(c), 2.24(b)(5). The Department of Interior regulations and *Casano* provide compelling evidence that agencies and the Courts have concluded that agency counsel review is among the reasonable precautions necessary to establish the disclosure was "inadvertent," as opposed to careless.

In a discovery context, the Wyoming Court has held that reasonable precautions contemplate "at least two privilege reviews having been conducted prior to disclosure" *KN Energy v. Sinclair Oil Corp.*, 1995 U.S. Dist. LEXIS 15658, at *9 (D. Wyo. June 1, 1995). The precautions were deemed reasonable in part, because of the fact that "only one privileged letter out of thousands was disclosed supports a finding that the precautions taken against disclosure were reasonable in this high volume disclosure case." *Id.* There is no way to know how many assertions of privilege are involved in the present matter because the Forest Service has not

16

maintained, and did not produce, a *Vaughn* index or other contemporaneous record that could establish "reasonable precaution." *Id*.

There can be no inadvertence here because the Forest Service did not use reasonable precautions in processing this FOIA request.

**4.      The Agency did not Carry its Burden to show FOIA Exemptions Apply**

There is no need to recall the documents because the Forest Service has not even attempted to carry its burden on each element of the asserted Exemption, and has failed to prepare a *Vaughn* index to ensure its Exemptions are properly asserted and applied in light of FOIA's public access purposes.

**a.      Failure to prepare a Vaughn Index Waived FOIA Exemptions**

The Forest Service did not, and has not, prepared nor produced a Vaughn index to support its assertions. *Anderson v. Department of Health and Human Services*, 907 F.2d 936, 941 (10th Cir. 1990) (*Vaughn* index is the normal means by which the "district court must determine whether all of the requested materials fall within an exemption to the FOIA."). Instead of citing evidence of the asserted Exemptions and whether the Exceptions were protected against waiver, the Motion string-cites cases and includes assertions of counsel. ECF No. 34 at 10-11.

Had a *Vaughn* index or log been produced, the timing and content of the assertion remains important to any underlying claim of privilege contained within the Exemptions. *Lugosch v. Congel*, 2006 U.S. Dist. LEXIS 53116, 2006 WL 931687, at *15 (N.D.N.Y. Mar. 7, 2006) ("Failure to timely provide the privilege log or objection constitutes a waiver of any of the asserted privileges.").  Under the Federal Rules the Forest Service seeks to invoke, the assertion must be made "expressly" and "when a party withholds information" by describing "the nature

of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed. R. Civ. P. 26(b)(5).  The Forest Service asserted no description at the time of production, except a stamp generally identifying the asserted FOIA Exemption.  A *Vaughn* index has still not been offered.  There is still no proffer of evidence regarding the asserted Exemptions, even though it is undisputed that the "district court must determine whether all of the requested materials fall within an exemption to the FOIA." *Anderson*, 907 F.2d 936, 941 (10th Cir. 1990).

The descriptions asserted by litigation counsel in the briefs also fall short of the FOIA standard.  In asserting an exemption the agency cannot merely "*parrot*" the statutory standard. *Anderson, 907 F.2d 936,* 942 (10th Cir. Utah 1990) *quoting Carter v. United States Dept. of Commerce,* 830 F.2d 388, 393 (D.C. Cir. 1987).  An Exemption cannot survive the agency failure to provide adequate information to support the agency burden to show it may properly withhold portions of agency records. *Id.*

The Courts normally reject uninformed agency decisions, and the District Court should reject the Forest Service reliance on counsel's statements in the brief and Mr. Condit's bare assertions of Exemptions.

**b.     The Elements of FOIA Exemption 5 are not Met.**

The agency assertions do not meet Exemption 5. ECF No. 34 at 10-11. "Exemption 5 excuses disclosure of 'inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.' […] In other words, it protects documents that would be covered by any privilege that an agency could assert in a civil proceeding. *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1226 (10th Cir. 2007)

*quoting* 5 U.S.C. § 552(b)(5).  The participation of an agency employee, agency attorney and DOJ attorneys, without more, does not satisfy the asserted privilege.

In civil proceedings, even if a communication was made between an attorney and client in confidence, the privilege may be vitiated for a number of reasons.  As a result, "an important element of the attorney-client privilege is showing that there has not been a waiver." *KN Energy, Inc. v. Sinclair Oil Corp.*, 1995 U.S. Dist. LEXIS 15658, *7 (D. Wyo. 1995).  As stated above, the Motion provides no information on preserving the information in context of establishing the privilege or establishing a prima facie case that the information was not shared, and therefore, there would have been privilege waived in a civil proceeding.

Moreover, for a governmental agency, like in the corporate context, privileged information should be kept in a highly confidential manner and disclosed only to those persons who need to know the information. *Upjohn Co. v. United States*, 449 U.S. 383, 394-95 (1981) (noting the subpoenaed questionnaires in the case were kept highly confidential and disclosed only to the company's general counsel and outside counsel).  No such assertion has been made for Tom Malecek, whose inclusion in the email string has not been explained.  The Motion does not explain why Mr. Capps included Mr. Malecek in a communication purportedly seeking legal advise from the Department of Justice.  More important, the Motion provides no evidence to support any element of *Upjohn,* let alone a sworn declaration supporting Mr. Malecek's need to know the contents of the email.

Undersigned counsel had already read the emails on May 17, 2019 and again on May 20, 2019. Based on memory, the emails involved the usual agency chatter about the litigation that has been released in scores of previous emails, but did not provide any legal advice of counsel to

what could be considered an agency client.  Read in context, the email is part of an email string that reveals the Forest Service personnel seem to be panicked that Plaintiffs had discovered the ongoing efforts by Mr. Malecek and others to take actions demanded by LMJV in October 2017 that would subvert the litigation and ongoing negotiations. *See e.g.* Ex. 5-6 (demands for agency action);  Ex. 9 (excerpt of formal objections), 10 (email string with body of email redacted). It is reasonable to believe that the information addressed in the email that the Forest Service seeks to recall was widely circulated as chatter beyond those with a need to know, and was either known by or communicated to LMJV by Tom Malecek or Ken Capps, or by the interactions between the Department of Justice and LMJV's litigation counsel.  However, it is uncertain when the Department of Justice attorneys were made aware of the agency's ongoing adventure to satisfy the developer's October 2017 demands, particularly in light of the Circuit Mediation that extended through the end of January 2018. Ex 5-6, 9-10.   Although FOIA places the burden on the agency, the Forest Service declaration makes no assertion that its employees did not disseminate the information contained in the email to LMJV or other persons outside the *Upjohn* group, nor did the declaration identify the *Upjohn* group. ECF No. 34-1

Attorney-client is not absolute, and there must be proof that it was carefully guarded to both invoke the Exemption and avoid waiver. *Trentadue v. Integrity Comm*., 501 F.3d 1215, 1226 (10th Cir. 2007) (the federal agency resisting disclosure in response to a FOIA request, bears the burden of justifying nondisclosure).  The discovery caselaw compels a similar result as applied to both attorney-client and work product privilege. *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 668-69 (10th Cir. 2006) *accord First Chicago International v. United Exchange Co. Ltd.*, 125 F.R.D. 55, 57 (S.D.N.Y. 1989) ("Any standard developed,

therefore, must strike a balance between encouraging corporations to seek legal advice and preventing corporate attorneys from being used as shields to thwart discovery.").

The Motion contains no description of the role Mr. Malecek played in the litigation and whether or not he communicated the information in the email to LMJV or others, and therefore, the Motion must fail. *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 668-69 (10th Cir. 2006) *quoting* R*esolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) ("The party asserting a work product privilege as a bar to discovery must prove the doctrine is applicable. . . .   A mere allegation that the work product doctrine applies is insufficient.").

The elements of Exemption 5 have not been met, and waiver has not been addressed, and therefore Exemption 5 cannot be used to withhold the agency record.

### c.      Exemption 6 does not Apply to Phone Numbers

The Supreme Court has confirmed that FOIA Exemptions are to be applied based on the plain language adopted by Congress, and has rejected interpretations that federal courts have used to deviate from FOIA's plain language. *Food Mktg. Inst. v. Argus Leader Media,* 2019 U.S. LEXIS 4200, at *15 (June 24, 2019). "Where, as here, that examination [of FOIA's language] yields a clear answer, judges must stop." *Id*. The Forest Service assertion of Exemption 6 to withhold a phone number contained in an email finds no support in the statute.

Exemption 6 applies to information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  Any case that construed an email containing a personal phone number as a personnel or medical file can no longer be construed or

applied as good law. *Food Mktg. Inst. v. Argus Leader Media*, 2019 U.S. LEXIS 4200, at *15 (June 24, 2019).

Applying FOIA's language faithfully and in accordance with FOIA's plain language, produces an easy result. First, the email, even an email containing a personal phone number, is not a personnel or medical record or a similar document.  It is an email.  An email is not similar to a personnel or medical record. 5 U.S.C. § 552(b)(6).

Second, no harm could befall a privacy interest.  Presumably, the phone number is already in the public domain and such numbers are regularly published in phone books and on the internet. *See* whitepages.com. There is no expectation of privacy to invade. *Id.*

Neither the first nor the second step of the Exemption 6 inquiry can be satisfied, and the Court "must stop" there. *Food Mktg. Inst. v. Argus Leader Media*, 2019 U.S. LEXIS 4200, at *15 (June 24, 2019).

There is no statutory basis to follow the approach taken by a District Court in Washington D.C. that ignored the first step of Exemption 6 and essentially amended FOIA by asking whether there was a public interest in disclosure. ECF No. 34 at 10-11 *citing People for Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 306-07 (D.D.C. 2007).  Although there is no basis to reason to balance the non-existent private interest in using an agency email and the public interest in FOIA access, the phone numbers (like full email addresses) used in agency emails are often useful to RMW's investigations into Forest Service personnel's actions and use of alternate means to circumvent public scrutiny. Ex. 7-8, 15 at 3WC_FOIA_028206 (noting that Defendant Dan Dallas received contacts regarding litigation via " agency and personal cell phone").

On the record created by the Forest Service, the phone number was offered voluntarily as a means of professional communication by an agency employee, with no violation of agency protocol asserted.  Other methods were available, but the person chose to provide a personal phone number using an email generated by governmental communications equipment.  Although not prohibited, there can be no expectation of privacy in the email, which is an agency record subject to FOIA.

Simply put, if the agency employee wants to maintain a private phone number, the personal phone number should not have been included in the email.  An email containing a personal phone number is not similar to a personnel or medical record addressed in Exemption 6. 5 U.S.C. § 552(b)(6).

### Conclusion

Despite repeated requests, the Forest Service has carelessly produced FOIA documents without the benefit of a privilege log, *Vaughn* index, or review by an attorney.  Post hoc assertions are futile after FOIA disclosure that destroyed any Exemption as of May 17, 2019, and were made impossible after publication to the internet on that same date.  The Motion asks the Court to go beyond its power and to revive FOIA Exemptions that were not justified at the time of release, and in any event, were waived by the agency's own conduct.  The circumstances warrant a finding that the careless approach to FOIA withholding was arbitrary and capricious, whether viewed in light of the duty FOIA imposes with regard to public access or duties to maintain legitimate agency secrets.

RESPECTFULLY SUBMITTED July 1, 2019:


*s/Travis E. Stills*
**Travis E. Stills**
Energy & Conservation Law
1911 Main Ave., Suite 238
Durango, Colorado 81301
(970) 375-9231
stills@frontier.net

**Matthew Sandler**
Rocky Mountain Wild
1536 Wynkoop St. Suite 900
Denver, CO 80202
303-579-5162
Matt@rockymountainwild.org
*Attorney for Plaintiff*
*Rocky Mountain Wild*

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2019, I served a copy of this document on all parties using the CM/ECF system, unless otherwise noted below.

*s/Travis E. Stills*
Travis E. Stills