**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-03065-MEH

ROCKY MOUNTAIN WILD, INC.,

      Plaintiff,

v.

UNITED STATES FOREST SERVICE, and
UNITED STATES DEPARTMENT OF AGRICULTURE,

      Defendants.

---

**DECLARATION OF JENNA SLOAN**

---

      I, Jenna Sloan, hereby declare as follows:

      1.      I am the Strategic Planning Director for the United States Forest Service, Rocky Mountain Region, stationed in Lakewood, Colorado.  I have held this position from January 2018, continuing through the present.   I previously held the position of Director, State and Private Forestry and Tribal Relations from approximately January 2017 through January 2018.  I also held an Applied Fire Ecologist position within the Washington Office of the Forest Service from approximately October 2014 through October 2015.

      2.      My responsibilities in this position include supervising and coordinating regional programs including forest planning, National Environmental Policy Act (NEPA), Social and Economic Sciences, Appeals, Administrative Review regulations and policies, Freedom of Information Act (FOIA), Electronic Freedom of Information Act (EFOIA), Privacy Act (PA), Records Management, and Litigation for the Rocky Mountain Region. I am responsible for

keeping the leadership up-to-date on important issues and provide advice and recommendations to management officials and deciding officials.  I provide recommendations or issue policy decisions for my programs.

3.     Due to the nature of my official duties, I am familiar with the processes and procedures the Forest Service follows in responding to FOIA requests made to the Forest Service in Colorado.

4.     As part of my official duties, I oversaw the Forest Service's response to the FOIA request at issue in this litigation, including supervising and communicating with the FOIA Coordinators and other individuals directly involved with this FOIA request.

5.     I make this declaration based on my personal knowledge; review of Forest Service records; and information gained in the course of my official duties, including through consultations with individuals directly involved in the records search in connection with this FOIA request.  The information contained in this declaration is accurate to the best of my current knowledge.

### Background on the Forest Service and the Village at Wolf Creek Access Project

6.     The Forest Service is responsible for managing millions of acres of public lands for various uses.   Those uses include recreation activities such as hiking, camping, and hunting, as well as extraction activities, such as logging and mining.

7.     Forest Service lands are divided into nine geographic regions, of which the Rocky Mountain Region is Region 2.  National Forests and Grasslands are divided into Ranger Districts, which report to a Supervisor's Office, which in turn reports to their regional office. Regional offices report to Forest Service headquarters in Washington, D.C.

8.      In 1986, the Forest Service completed a land exchange with the Leavell-McCombs Joint Venture ("LMJV").  By this exchange, a parcel of land located near the base of the Wolf Creek Ski Area, managed by the Rio Grande National Forest, was conveyed to LMJV in exchange for land elsewhere that was transferred to the Forest Service.

9.      The parcel of land conveyed to LMJV did not have access to the state highway system.  In 2006, the Forest Service issued a decision to allow access to the property.  That decision was subsequently challenged in court by Plaintiff's predecessor organization.  The court issued a preliminary injunction preventing development to build a road to access the property.  That lawsuit settled in 2008, to bring closure to the litigation and allow for the initiation of a new analysis.

10.      In July 2010, LMJV submitted a proposal to the Forest Service for a new land exchange as a way to provide year-round access to its property.  The Forest initiated another process under the National Environmental Policy Act ("NEPA") to evaluate this proposal.  Through a third-party contractor, the Forest Service prepared an Environmental Impact Statement ("EIS") to analyze the request for access pursuant to the Alaska National Interest Lands Conservation Act ("ANILCA").  A draft of that EIS was distributed for public comment in 2012.  On November 20, 2014, the Forest Service published the final EIS ("FEIS").

11.      The Forest Service issued a final Record of Decision ("ROD") on May 21, 2015, approving the land exchange.  Plaintiff, among others, challenged the decision in litigation pursuant to the Administrative Procedure Act ("APA").  The district court set the decision aside on May 19, 2017, and LMJV appealed to the Tenth Circuit.  That appeal was later dismissed.

12.      On July 19, 2018, the Rio Grande National Forest issued a new draft ROD, approving access to LMJV's land through a right-of-way access as opposed to a land exchange.

Before the draft ROD was issued, in connection with this new decision, Forest Service staff

prepared a Biological Assessment ("BA"); they also prepared a Supplemental Information

Report ("SIR") to determine if the 2014 EIS required supplementation.  The Forest Service also

consulted with the U.S. Fish and Wildlife Service, which concluded with a Biological Opinion

("BO") issued on December 17, 2018.

13.     The Forest Service received objections to the Draft ROD, including objections

from Plaintiff.  The objections were considered, and a response was issued on November 19,

2018.  On February 27, 2019, the Rio Grande National Forest issued the Final ROD.

14.     On May 28, 2019, Plaintiff initiated a lawsuit challenging the latest Final ROD.

*See Rocky Mountain Wild et al. v. Dallas et al.*, Case No. 19-cv-01512-CMA (D. Colo. filed

May 28, 2019).

<u>**Procedural History of Plaintiff's FOIA Request**</u>

15.     Plaintiff has previously submitted FOIA requests to the Forest Service in

connection with the Village at Wolf Creek access project.  The same parties to this action have

previously engaged in litigation regarding Plaintiff's FOIA requests, including in cases filed in

2014 and 2015.  *See Rocky Mountain Wild, Inc. v. United States Forest Service, et al.*, 14-cv-

02496-WYD-KMT (D. Colo. filed Sept. 9, 2014); *Rocky Mountain Wild, Inc. v. United States

Forest Service et al.*, No. 15-cv-00127-WJM-CBS (D. Colo. filed Jan. 19, 2015).

16.     On July 20, 2018, Plaintiff submitted a FOIA request to the Forest Service,

Region 2, seeking a broad range of documents relating to the Village at Wolf Creek Access

Project and the July 19, 2018 Draft ROD.  *See* Exhibit A.

17.     On August 7, 2018, the Forest Service sent a letter to Plaintiff, acknowledging

receipt of the request, seeking additional information to support Plaintiff's fee waiver request,

and noting that the request had been assigned FOIA tracking number 2018-FS-R2-05258-F.  *See* Exhibit B.  That letter also noted that the FOIA request appeared to encompass communications among the Forest Service, USDA's Office of the General Counsel ("OGC"), and the United States Department of Justice ("DOJ") regarding the ongoing litigation involving Plaintiff and the agency.  *See id.* at 3.  The letter indicated that the Forest Service would construe the FOIA request *not* to include such documents, which would be subject to privilege and for which Plaintiff could expect to receive, at most, a large privilege log of records exempt from disclosure. *See id.*  Finally, that letter noted that the FOIA request was complex and that "exceptional circumstances" pursuant to 5 U.S.C. § 552(a)(6)(C) were present.  *Id.*

18.     Plaintiff responded to the Forest Service's inquiries by letter dated August 16, 2018.  *See* Exhibit C.  That letter provided additional information in support of Plaintiff's fee waiver request.  *See id.* at 1-4.  The letter also confirmed that the FOIA request *did* seek communications among the Forest Service, OGC, and DOJ relating to "any past or current litigation" and insisted that any assertion of privilege for such documents "must be supported within a lawful Vaughn index."  *Id.* at 5.

19.     The Forest Service sent Plaintiff two additional letters, both dated September 5, 2018.  *See* Exhibits D & E.  The first letter granted Plaintiff's fee waiver request.  *See* Exhibit D at 2.  The letter repeated that "exceptional circumstances" pursuant to 5 U.S.C. § 552(a)(6)(C) were present, due to the complexity of the FOIA request.  *Id.* at 2.

20.     The second letter dated September 5, 2018 also stated that "exceptional circumstances" pursuant to 5 U.S.C. § 552(a)(6)(C) were present.  *See* Exhibit E at 4.  That letter indicated that the Forest Service had assigned a separate tracking number for the portion of Plaintiff's FOIA request encompassing records within the scope of the FOIA request that related

to prior and ongoing litigation involving Plaintiff and the agency.  *See id.* at 1-3.  Subsequently, however, the Forest Service determined to consider all portions of the FOIA request under the same, initially assigned tracking number, 2018-FS-R2-05258-F.

### Search for Potentially Responsive Documents

21.     The Forest Service interpreted the FOIA request to encompass all Forest Service records relating to the Village at Wolf Creek Access Project.  The Forest Service interpreted the FOIA request *not* to include any documents that Plaintiff had already received or had access to, including documents produced or filed in prior litigations to which Plaintiff was a party, and documents made available to the public through Internet links or other means.

22.     The Forest Service initially considered that the beginning cut-off date for documents in response to the FOIA request would be November 20, 2014.  However, the Forest Service ultimately determined that the appropriate beginning cut-off date was May 22, 2015. This was because any documents dated prior to May 22, 2015 would likely be duplicative of documents Plaintiff has already received or been provided access to.  Specifically, an extremely broad selection of documents relating to the Village at Wolf Creek access project was previously reviewed and produced to Plaintiff in the course of FOIA requests and litigation from 2014 through 2016 and in the administrative record for the 2015 APA case, which covered the time period through the date of the May 21, 2015 ROD.

23.     The Forest Service initially considered that the end cut-off date for documents in response to this FOIA request would be July 20, 2018, the date of the request.  Plaintiff objected to this cut-off date, and the Forest Service subsequently determined to extend the end cut-off date for documents responsive to this search to March 1, 2019.

24.     After the FOIA request was received, I met with other Forest Service individuals multiple times to discuss the scope of the request and documents likely to be responsive.  We worked to identify those agency employees reasonably likely to have documents responsive to the FOIA request.  Based on those conversations, the Forest Service identified the employees listed below because they were identified as having an administrative or primary responsibility, or substantive involvement regarding the development, review, administrative review, and/or issuance of the 2018 Draft ROD and 2019 Final ROD.  It was determined that communications relating to the Village at Wolf Creek access project within the defined timeframe would have been routed through or originated by one or more of these listed individuals, and therefore that those individuals would have records of documents relating to the project.

25.     The Forest Service identified the following twenty-seven individuals as those likely to have responsive records (the "custodians"):

    a.  Brian Ferebee, Regional Forester, Lakewood, CO

    b.  Tammy Whittington, Deputy Regional Forester, Lakewood, CO

    c.  Jacque Buchanan, Deputy Regional Forester, Lakewood, CO

    d.  Dan Dallas, Forest Supervisor, Monte Vista, CO

    e.  Tom Malecek, Deputy Forest Supervisor, Monte Vista, CO

    f.  Jenna Sloan, Director of Strategic Planning, Lakewood, CO

    g.  Steve Lohr, Director of Renewable Resources, Lakewood, CO

    h.  Valerie Baca, Director of External Affairs, Lakewood, CO

    i.  E. Lynn Burkett, Director, Recreation, Lands, Minerals and Volunteers, Lakewood, CO

j.   Jason Robertson, Deputy Director Recreation, Lands, Minerals, and Volunteers, Lakewood, CO

k.   Dave Loomis, NEPA Program Lead, Lakewood, CO

l.   Bunni Maceo, Regional Budget Director, Lakewood, CO

m.  Don Dressler, Mountain Resort Program Manager, Lakewood, CO

n.   Deb Ryon, National FirstNet Project Manager, Lakewood, CO

o.   Patricia Hesch, Region 2 Land Ownership Adjustment Program Manager, Lakewood, CO

p.   Guy Blackwolf, Environmental Coordinator, Monte Vista, CO

q.   Ken Tu, Regional Admin Review Coordinator, Lakewood, CO

r.   Lynne Hagen, Litigation Coordinator, Lakewood, CO

s.   Lawrence Lujan, Regional Press Officer, Lakewood, CO

t.   Olga Troxel, Administrative Review Assistant, Missoula, MT

u.   Peter McDonald, Threatened Endangered and Sensitive Species Program Leader, Lakewood, CO

v.   Melissa Dressen, Wildlife Biologist, Steamboat Springs, CO

w.  Oscar Martinez, District Ranger, Pueblo, CO

x.   Matt Klein, Realty Specialist, Minturn, CO

y.   Niccole Mortenson, Engineering and Minerals NEPA Project Specialist, Missoula, MT/Delta, CO

z.   Sara Beck, Forest Planner and Environmental Coordinator, Fort Collins, CO

aa. Katie O'Conner, Director, Washington, DC

26.     A list of custodians was provided to Plaintiff on May 2, 2019.  I understand that Plaintiff did not request that the Forest Service add any custodians to that list.

27.     One individual, Mike Blakeman, was inadvertently erroneously included on the May 2, 2019 custodian list.  Mr. Blakeman, a former Public Affairs Specialist for the Rio Grande National Forest's Monte Vista office, retired from the Forest Service on February 28, 2019.  The Forest Service had considered whether Mr. Blakeman should be included as a custodian for this FOIA request, but given his role, it was ultimately determined that his communications were typically in response to other custodians, and therefore his records were unlikely to include any documents that would not be found in other custodians' responsive records.

28.     The records of each of the twenty-seven custodians listed above were searched for documents potentially responsive to this FOIA request.  I, along with other Forest Service individuals, worked to ensure those searches were conducted in a manner likely to identify responsive records.

29.     Most of the custodians searched their own documents, using the search parameters they identified as most likely to identify potentially responsive documents, as the custodians themselves were best-positioned to know (i) where they would have potentially responsive documents in their files and (ii) what search parameters would be best aimed to locate those documents.

30.     To the best of my knowledge, the custodians' searches of their own files encompassed the following records systems and search terms:

    a.  Bunni Maceo:

       i.  Records locations searched:  Outlook/email

       ii.  Search terms used:  "Wolf Creek"; "VWC"; "LMJV"

b. Don Dressler:

    i. Records locations searched:  Hard copy permit files, C: drive, Outlook/emails

    ii. Search terms used:  "Wolf Creek"; "Village at Wolf Creek"; "Village at Wolf Creek Access Project"

c. Deb Ryon:

    i. Records locations searched:  Hard copy files, computer Village at Wolf Creek file, Outlook/emails

    ii. Search terms used: "VWC"; names of Forest Service employees involved in the Village at Wolf Creek access project

d. Jason Robertson

    i. Records locations searched: Outlook/email and archives

    ii. Search terms used:  "Wolf Creek"; "Wolf"

e. Jenna Sloan:

    i. Records locations searched:  Hard copy files, computer hard drive, Outlook/email

    ii. Search terms used: "WCV"; "Wolf Creek"; "Village at Wolf Creek"

f. Kenneth Tu:

    i. Records locations searched:  Notebook, computer hard drive, Outlook/email

    ii. Search terms used: Mr. Tu individually reviewed documents that he located that were potentially related to the Village at Wolf Creek access

project and provided them to be processed and reviewed as part of the
FOIA response as appropriate.

g.   Lynne Hagen:

   i.   Records locations searched:  Hard copy files, Outlook/email, email
        archive, Pinyon (a file management system used by the Forest Service in
        some instances), C: drive

   ii.  Search terms used:  Ms. Hagen did not apply individual search terms as
        her documents relating to the Village at Wolf Creek access project were
        organized into specific folders in various locations.  She provided all
        documents from those locations to be processed and reviewed as part of
        the FOIA response.

h.   Lawrence Lujan:

   i.   Records locations searched:  Outlook/email, computer system, Pinyon

   ii.  Search terms used: "Village at Wolf Creek access project"

i.   Patricia Hesch:

   i.   Records locations searched:  Outlook/email, folders titled "5430 Land
        Exchange/Wolf Creek" and "Documents/Wolf Creek"

   ii.  Search terms used: "Wolf Creek"

j.   Peter McDonald:

   i.   Records locations searched: Hard drive folder dedicated to the Wolf Creek
        project, Outlook/email folder dedicated to the Wolf Creek project; Pinyon
        folder dedicated to the Wolf Creek project

ii.  Search terms used:  Mr. McDonald applied search terms for an earlier

search, but his search performed in March 2019 did not use keyword

searches because he knew where in his files potentially responsive

documents would have been stored, and he provided all the files from

those locations.

k.  Steve Lohr:

i.  Records locations searched:  Outlook/email, computer

ii.  Search terms used: "Wolf Creek"; "Leavell-McCombs Joint Venture"

l.  Valerie Baca:

i.  Records locations searched: Outlook/email, computer system

ii.  Search terms used: "Village at Wolf Creek Access Project"; "VWC";

"Wolf Creek"

m.  Olga Troxel:

i.  Records locations searched: Outlook/email, C: drive folder titled

"C:\WorkSpace\RODetail2018\WolfCreek"

ii.  Search terms used: "VWC"; "Wolf Creek"; "Village at Wolf Creek"

n.  Melissa Dressen:

i.  Records locations searched: Outlook/email, computer hard drive

ii.  Search terms used: "Wolf Creek", names of Appeal Team members

o.  Katie O'Connor:

i.  Records locations searched: Outlook/email, computer hard drive

ii.  Search terms used: "Wolf Creek"

p.  Guy Blackwolf:

       i.  Records locations searched: Outlook/email via Proofpoint

      ii.  Search terms used:  Mr. Blackwolf did not use search terms, but did a search of his records that did not identify any potentially responsive records that would have been unique—that is, not present in the records of other custodians for this FOIA response.

q.  E. Lynn Burkett:

       i.  Records locations searched: Hard copy records, Outlook/email

      ii.  Search terms used: "Wolf Creek"

r.  Matthew Klein:

       i.  Records locations searched:  laptop PC, Outlook/email

      ii.  Search terms used: "Wolf"; "RART"; "Capps"; "Troxel"; "Martinez"; "Oscar"

s.  Niccole Mortenson:

       i.  Records locations searched:  Hard drive, Outlook/emails

      ii.  Search terms used: "Wolf Creek"; "Response"; date ranges of administrative review

t.  Oscar Martinez:

       i.  Records locations searched:  Word documents, Outlook/emails

      ii.  Search terms used: "Wolf Creek"; "RART"

31.    The Forest Service does not have contemporaneous record of the specific locations and search terms Dave Loomis used to search his files.  However, agency records indicate that Mr. Loomis *did* do a search, which identified no documents responsive to the FOIA request.

32.     Brian Ferebee, Jacque Buchanan, Tammy Whittington, Dan Dallas, and Tom Malecek delegated the task of searching their records to their administrative assistants.  To the best of my knowledge, the searches of Mr. Ferebee, Ms. Buchanan, Ms. Whittington, Mr. Dallas, and Mr. Malecek's files encompassed the following records systems and search terms:

a.  Brian Ferebee:

    i.  Records locations searched: Computer and Outlook/emails

    ii.  Search terms used: "Village at Wolf Creek"; "Record of Decision"; "Village"; "Wolf Creek"; "ANILCA"

b.  Jacque Buchanan:

    i.  Records locations searched: Computer and Outlook/emails

    ii.  Search terms used: "Wolf Creek"; "Village at Wolf Creek ANILCA"

c.  Tammy Whittington:

    i.  Records locations searched: Computer and Outlook/emails

    ii.  Search terms used: "Wolf Creek"; "LMJV"; "ANILCA"; "Village at Wolf Creek ANILCA"

d.  Dan Dallas:

    i.  Records locations searched:  Computer/Outlook via Proofpoint Enterprise Archive, Outlook via workstation

    ii.  Search terms used: "Village at Wolf Creek"; "Wolf Creek"; "VWC"; "WCV"; "Red McCombs"; "McCombs"; "Clint Jones"; "Dusty Hicks"; "LMJV"; "Leavell-McCombs Joint Venture"; "Leavell-McCombs"; "USFWS"; "FWS"; "CPW"; "Colorado Parks and Wildlife"; "Regional Office"; "RO"; "CDOT"; "Colorado Department of Transportation"

    e.  Tom Malecek:

        i.  Records locations searched: Computer/Outlook via Proofpoint Enterprise Archive

        ii.  Search terms used: "Village at Wolf Creek"; "Wolf Creek"; "VWC"; "WCV"; "Red McCombs"; "McCombs"; "Clint Jones"; "Dusty Hicks"; "LMJV"; "Leavell-McCombs Joint Venture"; "Leavell-McCombs"; "USFWS"; "FWS"; "CPW"; "Colorado Parks and Wildlife"; "Regional Office"; "RO"; "CDOT"; "Colorado Department of Transportation"

33.    Multiple email messages were sent to custodians requesting that they search for responsive documents.  Custodians—or the individuals conducting searches on behalf of custodians—were instructed to search for "all agency communications and records pertaining to the Village at Wolf Creek ANILCA access project and decision from May 22, 2015 through March 1, 2019."

34.    Locations searched in connection with this FOIA request included physical hard copy files, external and internal computer hard drives, and email communications and attachments saved on the Forest Service's ProofPoint Enterprise Archive system.

35.    For most custodians, two separate rounds of searches for responsive documents were conducted.  However, to the best of my knowledge, all of the twenty-seven custodians' files were searched after March 1, 2019 (the end cut-off date for documents responsive to the FOIA request).  The searches of custodians' documents were conducted in a manner as to identify documents and communications made up to March 1, 2019.

36.    Most, but not all, of the custodians' searches identified documents potentially responsive to the FOIA request.  Potentially responsive documents were saved electronically, in

folders on a shared location on the Forest Service's Pinyon content-management system, organized by the custodians' last names.  Some custodians saved their potentially responsive documents directly to the folder themselves; others sent the files to the Regional FOIA Coordinator to be placed into the appropriate folder.

37.     The identified potentially responsive documents were loaded into FOIAXpress, the system that the Forest Service—like many other federal agencies—typically uses to process documents in connection with FOIA requests.

38.     In general, the custodians' documents were received in their native format, and were converted to PDF format as they were processed via FOIAXpress.

39.     Upon initial review of the documents received from the identified custodians, it was determined that no other custodians should be searched, as their records were not reasonably likely to contain unique documents not already captured by the searches the identified custodians had performed.

### Forest Service Review and Productions of Responsive Documents

40.     The Forest Service assigned a team of reviewers to conduct the initial review of potentially responsive records.  Due to the large volume of documents at issue, the pace of productions, and limited resources and the press of the Forest Service's ongoing work and numerous other FOIA requests, the team included some individuals experienced in FOIA matters and others with limited prior FOIA experience.  The membership of the team varied somewhat during the lengthy course of the review.

41.     The Forest Service reviewed the PDF versions of the documents, after they had been processed via FOIAXpress.  This allowed for the application of redactions to material exempted from disclosure under FOIA.

42.     The Forest Service's review process involved multiple steps.  The review team sifted through the identified potentially responsive documents to eliminate documents not responsive to the FOIA request.  The review team also endeavored to remove documents that, as evident on their face, had previously been produced to Plaintiff or otherwise made publicly available.  This included documents that bore a CM/ECF header, indicating that they had been filed on the Court's docket and were therefore publicly available.

43.     The review team also reviewed documents for the applicability of any FOIA exemptions, and applied redactions to all or parts of the pages of each document as appropriate.

44.     As part of the Forest Service's review process, reviewers endeavored to cull documents that were outside the applicable timeframe between May 22, 2015 and March 1, 2019.  However, a significant number of documents dated before May 22, 2015 were ultimately included in the productions to Plaintiff, due at least in part to older documents and communications being attached to communications that *did* fall within the relevant timeframe for the FOIA request.

45.     Once the documents to be included in a production were reviewed, the Forest Service Bates-labeled each page of the production and burned the production onto discs that were sent to Plaintiff's counsel.

46.     Between March 2019 and March 2020, the Forest Service made twenty-seven rolling productions to Plaintiff of documents in response to the FOIA request.  Each rolling production was accompanied by a cover letter from the Forest Service.  The cover letters for the twenty-seven rolling productions between March 2019 and March 2020 are attached here, together, as Exhibit F.

47.     The Forest Service provided Plaintiff with amended, replacement productions for two of the rolling productions after it was discovered, shortly after those productions were sent, that exempt material had been inadvertently included without proper redactions.  *See* Exhibit G.

48.     Following the Court's Order of April 23, 2019 that the Forest Service increase its pace of productions, each of the Forest Service's biweekly rolling productions included at least 6,000 pages.

49.     A large number of produced documents contained one or more redactions pursuant to FOIA exemptions.  In general, those applied redactions included text indicating the exemption being asserted.

**Additional Review and Re-Production of Responsive Documents**

50.     In light of the large volume of documents at issue, and the fact that a significant proportion of those documents involved the application of one or more privileges, the Forest Service engaged an experienced, qualified outside contractor to assist with preparing the final *Vaughn* index in this matter.  As part of that process, the Forest Service also asked the contractor to review the documents that had been produced once more, to determine whether any redactions that were applied to the documents when they were initially produced should be reduced or removed.

51.     The Forest Service provided the contractor with the documents that had previously been produced to Plaintiff in response to the FOIA request.  The contractor loaded these documents onto a document review platform, through which duplicate documents could more readily be identified and reviewed to ensure FOIA exemptions were being asserted consistently across duplicate and near-duplicate documents.

52.     In consultation with Forest Service individuals and attorneys for Defendants, the contractor reviewed the previously produced documents and reduced or removed redactions where it was deemed appropriate to do so.

53.     In situations where it was not deemed appropriate to reduce or remove redactions from the previously produced documents, the contractor was instructed to reproduce the original redactions on the documents in the document review platform, such that the same information that was redacted when the document was initially produced would be redacted in the re-production.

54.     On September 10, 2020, the Forest Service re-produced to Plaintiff all of the documents that had previously been included in the rolling productions in response to the FOIA request.  *See* Exhibit H (re-production cover letter).  That re-production reflected the documents for which it had been determined that the redactions applied when the documents were initially produced should be reduced or removed.  *See id.*  Additionally, the re-production included each document as an individual PDF file, as opposed to the documents being combined into larger PDF files, which was an issue Plaintiff had recently raised well after the completion of the rolling productions in March 2020.

55.     The September 10, 2020 re-production also included two pages that were inadvertently omitted from the prior rolling productions.  *See id.*

56.     In total, the Forest Service has produced 14,740 documents encompassing 140,637 pages to Plaintiff in response to the FOIA request.

## Applicable FOIA Exemptions and the *Vaughn* Index

57.     The documents responsive to the FOIA request were reviewed to ensure that all reasonably segregable information not subject to a FOIA exemption has been released in the documents produced to Plaintiff.

58.     In the course of the review of documents responsive to the FOIA request, it was determined that certain information responsive to the request should be withheld under FOIA exemptions 2, 4, 5, and 6.

59.     Exemption 2 protects records that are "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  In this case, the Forest Service redacted agency telephone conference numbers and passcodes pursuant to Exemption 2.  These numbers relate solely to internal agency practices and are of little to no public interest.  Moreover, disclosure of these numbers could allow individuals outside the agency to dial into the agency's telephone conference system and obtain unauthorized access to agency information and disrupt agency operations.

60.     Exemption 4 protects "trade secrets and commercial or financial information obtained from a person and privileged or confidential."  *Id.* § (b)(4).  Here, the Forest Service has redacted confidential commercial and financial information from a small number of documents, including corporate bank account numbers, estimated insurance premiums, and information provided in connection with billing statements from Plaintiff's counsel.

61.     Exemption 5 protects inter- or intra-agency documents "that would not be available by law to a party other than an agency in litigation with the agency."  *Id.* § (b)(5).  Exemption 5 therefore incorporates all common law and governmental privileges and protections

that protect federal materials from discovery in federal litigation, including the attorney-client privilege, work product protection, and the commercial information privilege.

62.     As indicated in the attached *Vaughn* index (Exhibit I), a large number of documents were withheld in full or in part pursuant to the attorney-client privilege.  The information redacted from these documents pursuant to this privilege consists overwhelmingly of: (i) communications among Forest Service personnel, OGC attorneys, and/or DOJ attorneys in the course of seeking or providing the attorney's legal advice, or seeking or providing information necessary to provide legal advice; and (ii) documents reflecting OGC and/or DOJ attorneys' legal advice in the form of comments or drafts.  If disclosed, the redacted information would reveal confidential, attorney-client privileged material.

63.     Additionally, as indicated in the attached *Vaughn* index, a large number of documents were withheld in full or in part pursuant to work product protection.  These redactions often, though not always, overlapped with redactions for attorney-client privilege.  A significant number of draft documents, and communications relating to draft documents, were redacted for work product as they were prepared by, or at the direction or supervision of, attorneys in the context of ongoing or foreseeable litigation under the APA and/or FOIA.  Those draft documents include, among other things: drafts of briefs, declarations, and other filings in connection with ongoing litigation; drafts of the Draft Record of Decision ("ROD") dated July 19, 2018, which was drafted by OGC attorney Kenneth Capps in consultation with the Forest Service; drafts of the Final ROD dated February 29, 2019, which was based on the Draft ROD Mr. Capps drafted in consultation with the Forest Service; drafts of the United States Fish and Wildlife Service's Biological Opinion ("BO") finalized on December 17, 2018, which was prepared in consultation with the Forest Service; drafts of the and Biological Assessment ("BA") dated July 18, 2018;

drafts of the Supplemental Information Report ("SIR") dated June 28, 2018; drafts of communications plans, briefing papers, and press releases regarding the Village at Wolf Creek access project; and drafts of the Environmental Impact Statement ("EIS") dated November 20, 2014. The information redacted from the documents pursuant to work product protection includes information that contains an attorney's mental impressions in the course of ongoing and/or anticipated litigation, or materials prepared at the direction or under the supervision of attorneys in the context of ongoing and/or anticipated litigation.  If disclosed, the redacted material would reveal attorney mental impressions and factual work product.

64.     Finally, the confidential commercial information privilege also applies to protect the same internal teleconference numbers and passcodes that are protected by Exemption 2. These numbers are shared internally for the purpose of conducting official government business. Release of this information would harm the government's financial interest in maintaining the integrity of the commercial telephonic systems it contracts for.

65.     The records withheld in full or in part pursuant to Exemption 5 constitute inter- or intra-agency documents because they were shared among individuals with the Forest Service, OGC, and DOJ.  To the best of my knowledge, and as indicated on the *Vaughn* index, these documents were not shared with any non-government persons, other than the contractor hired by the Forest Service to assist with the preparation of the *Vaughn* index in this case.

66.     Exemption 6 protects "personnel and medical files and similar files[,] the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  *Id.* § (b)(6).  Here, the Forest Service has redacted personal information including individuals' home addresses, personal telephone numbers, personal email addresses, usernames and passwords, and

taxpayer identification numbers.  The disclosure of this information would serve little to no public interest, and would constitute an unwarranted invasion of the individuals' privacy.

67.  In total, 7,757 documents were withheld in whole or in part pursuant to one or more FOIA exemptions.

68.  A description of all of the material withheld in whole or in part pursuant to FOIA Exemptions, and the bases for asserting those Exemptions, are set forth in the *Vaughn* index attached hereto as Exhibit I.

69.  The attached *Vaughn* index includes one entry for each document over which one or more FOIA exemptions are asserted.

70.  The *Vaughn* index is organized as follows:

a.  The first column, "Entry" provides a reference number for the entries on the index.

b.  The second and third columns, "Bates Begin" and "Bates End," provide the production Bates page range of the document for which one or more FOIA Exemptions is being asserted.

c.  The fourth column, "Date or Date Range," reflects the date of the document in question, where that information is available.  A date range typically refers to an email chain that took place over multiple days.

d.  The fifth column, "Author/From," indicates the author or sender of a document or communication, where that information is available.

e.  The sixth column, "Recipient(s)/To," indicates the recipient(s) of a document or communication, where that information is available.

f.  The seventh column, "CC," reflects any individuals copied on a communication.

g.  The eighth column, "BCC," reflects any individuals blind-copied on a communication.

h.  For email chains involving multiple messages (or "links"), the Author/From, Recipient(s)/To, CC, and BCC columns in the *Vaughn* index generally reflect the information for the *most recent* email in the chain.

i.  The ninth column, "Additional Attorney Involvement," records the names of any attorney whose involvement in the document in question may be relevant for the exemption being asserted, but whose name does not otherwise appear in another column in the entry for that document.

j.  The tenth column, "Exemption(s) Asserted," indicates which FOIA exemption(s) are being asserted as to the document.

k.  The eleventh column, "Withheld in Full/Part" indicates whether a document was withheld in full (that is, the document was produced with full-page redactions on every page), or withheld in part (that is, only part of the document was redacted).

l.  The twelfth column, "Basis for Exemption," explains the basis for the claimed FOIA exemption(s).  Where more than one exemption is claimed for a single document, this column of the *Vaughn* index entry for that document includes a paragraph for *each* claimed exemption in this column.  Similarly, where more than one privilege under Exemption 5 is asserted as to a document, the *Vaughn* index entry for that document includes a paragraph for *each* privilege asserted.

### Summary

71.     In sum, in response to Plaintiff's FOIA request—which was extremely broad in terms of the subject matter and the time period it covered—the Forest Service conducted a

thorough search of all files and systems reasonably likely to contain records responsive to the request.

72.     The responsive documents identified by this search included a large proportion of documents that were subject to one or more privileges, particularly the attorney-client privilege and work product protection.  This was due to the fact that the search encompassed documents in connection with multiple prior litigations involving Plaintiff and the Forest Service, and that Plaintiff refused to narrow its request to exclude documents created in connection with those litigations, which were likely to be privileged.

73.     Following the search for responsive documents, the Forest Service carefully reviewed all of the responsive documents to ensure that the material being withheld was properly subject to a FOIA Exemption.  Not only that, but the Forest Service voluntarily undertook to engage a contractor to review the previously produced documents again, to confirm whether there was any additional non-exempt information that could be segregated and released to Plaintiff.  The Forest Service then re-produced the documents to Plaintiff, having reduced or eliminated redactions on a significant number of documents.

74.     After the review of responsive documents by the Forest Service and the contractor, it has been determined that no additional meaningful, non-exempt information contained in the documents can be disclosed.

75.     The Forest Service has attempted to address issues raised by Plaintiff regarding the response to the FOIA request where possible, including by extending the end cut-off date of the search by nearly eight months, considering the totality of the FOIA request under one tracking number, and re-producing all previously produced documents to Plaintiff as individual PDFs.

76.     Consistent with Plaintiff's expressed preferences, the Forest Service has also included on the *Vaughn* index entries for each document for which any exemption(s) are claimed, even documents identified as duplicates; CC and BCC information which would be readily ascertainable to Plaintiff from the face of the documents themselves; and justifications for relatively straightforward and legitimate withholdings such as personal telephone numbers pursuant to Exemption 6.

77.     The Forest Service's efforts to accommodate Plaintiff's preferences and to address their concerns where possible have substantially increased the effort and resources required to produce documents and a *Vaughn* index in connection with this FOIA request.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.

Executed this 11th day of September, 2020

*/s Jenna Sloan*
Jenna Sloan
Director, Strategic Planning
U.S. Forest Service, Rocky Mountain Region