IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-03065-MEH

ROCKY MOUNTAIN WILD, INC.,

     Plaintiff,

v.

UNITED STATES FOREST SERVICE, and
UNITED STATES DEPARTMENT OF AGRICULTURE,

     Defendants.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

Plaintiff, a wildlife and land conservation group, alleges that Defendant United States Forest Service[1] ("Defendant" or "Forest Service") violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, by improperly responding to Plaintiff's FOIA requests for documents related to a land exchange that occurred in the 1980s. Before the Court are the parties' cross motions for summary judgment (ECF 49 and 53). The motions are fully briefed, and the Court finds that oral argument will not assist in their adjudication. Based on the record and the

---

[1] Under FOIA, this Court has the power "to enjoin [an] *agency* from withholding agency records and to order the production of any agency record improperly withheld." 5 U.S.C. § 552(a)(4)(B) (emphasis added). The Court notes that the only proper defendant to a FOIA case is a federal agency. *See, e.g., Batton v. Ever*s, 598 F.3d 169, 173 n.1 (5th Cir. 2010); *Ginarte v. Mueller*, 534 F. Supp. 2d 135, 136–37 (D.D.C. 2008); *Gallagher v. Nat'l Sec. Agency*, No. 18-cv-01525-GPG, 2018 WL 9413215, at *1 (D. Colo. Aug. 23, 2018). Although there is some disagreement about whether agency components, like the U.S. Forest Service, are subject to FOIA in their own names, *see Jean-Pierre v. Fed. Bureau of Prisons*, 880 F. Supp. 2d 95, 101 (D.D.C. 2012), in this case the Department of Agriculture is certainly a party defendant. *Ginarte*, 534 F. Supp. 2d at 137. Accordingly, for the sake of ease, the Court discusses a single Defendant throughout the remainder of this Order.

following analysis, the Court denies Plaintiff's Motion for Summary Judgment and grants Defendant's Motion for Summary Judgment.

## FINDINGS OF FACT

Cross motions for summary judgment are examined under the usual Rule 56 standards, with the court viewing all facts and reasonable inferences in the light most favorable to the nonmoving party. *Denver Inv. Advisors, LLC v. St. Paul Mercury Ins. Co.*, No. 17-cv-00362-MEH, 2017 WL 3130923, at *1 (D. Colo. July 24, 2017). The following are the Court's finding of material facts that are either undisputed or supported by the record. The Court notes instances of dispute between the parties when appropriate.

**I.     Background of the Wolf Creek Project and Prior Litigation**

1.     Around 1986,[2] the Forest Service completed a land exchange with the Leavell-McCombs Joint Venture ("LMJV"). Declaration of Jenna Sloan ("Sloan Decl.") ¶ 8.

2.     With this exchange, a parcel of land located near the base of the Wolf Creek Ski Area, managed by the Rio Grande National Forest, was conveyed to LMJV in exchange for land elsewhere that was transferred to the Forest Service. *Id.*

3.     At the time of the land exchange, the parcel of land conveyed to LMJV did not have access to the state highway system. *Id.* ¶ 9.

4.     In 2006, the Forest Service issued a Record of Decision ("ROD") to allow additional access to the property. *Id.*

5.     The decision was subsequently challenged in court by Plaintiff's predecessor organization. *Id.*

6.     That lawsuit settled in 2008 to bring closure to the litigation and allow for the initiation of a new analysis. *Id.*

7.      LMJV submitted an amended application to the Forest Service regarding a proposed land exchange around July 2010.  *Id.* ¶ 10.

8.      The Forest Service initiated another process under the National Environmental Policy Act ("NEPA") to evaluate this proposal.  *Id.* ¶ 10.

9.      Through a third-party contractor, the Forest Service prepared an Environmental Impact Statement ("EIS") to analyze the request for access pursuant to the Alaska National Interest Lands Conservation Act ("ANILCA").  *Id.*

10.     A draft of the EIS was distributed for public comment in 2012.  *Id.*

11.     On November 20, 2014, the Forest Service published the Final EIS ("FEIS").  *Id.*

12.     Kenneth Capps, an attorney for the United States Department of Agriculture's Office of General Counsel, was specifically involved in drafting the ANILCA section of the EIS and was asked to review other portions of the document. Declaration of Lynne Hagen ("Hagen Decl.") ¶ 9.

13.     The parties dispute whether the Forest Service reasonably anticipated future litigation regarding the Wolf Creek project at the time of the EIS.  Defendant's Motion for Summary Judgment ("MSJ") ¶ 13; Plaintiff's Response to the MSJ/Cross Motion for Summary Judgment ("Response" or "Cross MSJ") ¶ 13.

14.     The Forest Service issued a final ROD on May 21, 2015, approving the land exchange. Sloan Decl. ¶ 11.

15.     Mr. Capps was asked to review draft and final documents relating to the 2015 ROD, including the ROD itself.  Hagen Decl. ¶ 9.

16.     Plaintiff, among others, challenged the decision in litigation pursuant to the APA (the "prior APA litigation"), although litigation over the 2015 ROD and 2014 FEIS is still ongoing.

---

[2] The parties dispute the year, but that information is immaterial for purposes of this case.

Sloan Decl. ¶ 11; *see Rocky Mountain Wild v. Dallas et al.*, 15-cv-01342-JLK (D. Colo. filed June 24, 2015).

17.     The administrative record in the prior APA litigation was comprised of documents that were directly or indirectly considered by the decision maker in connection with the May 21, 2015 ROD and FEIS for the Village at Wolf Creek access project.   Declaration of Gary Blackwolf ("Blackwolf Decl.") ¶ 2, ECF 52-2 at 1–3.

18.     That administrative record included over 18,000 pages of documents described as the "conventional" administrative record, as well as approximately 45,000 additional pages of emails and attached documents, all of which were produced to Plaintiff.  Hagen Decl. ¶ 5; Blackwolf Decl. ¶¶ 2–3.

19.     In the course of assembling that administrative record, the Forest Service conducted broad searches across many employees' files, returning a large dataset.  Hagen Decl. ¶ 6.[3]

20.     In addition to the documents produced to Plaintiff in the prior APA litigation, Plaintiff has previously received documents in response to FOIA requests relating to the Wolf Creek project. Sloan Decl. ¶ 15; *see Rocky Mountain Wild, Inc. v. United States Forest Service, et al.*, 14-cv-02496-WYD-KMT (D. Colo. filed Sept. 9, 2014); *Rocky Mountain Wild, Inc. v. United States Forest Service et al.*, No. 15-cv-00127-WJM-CBS (D. Colo. filed Jan. 19, 2015).

21.     Documents were produced to Plaintiff in connection with those prior FOIA requests between 2014 and 2016.  Sloan Decl. ¶ 22.

---

[3] Pursuant to the Court's Practice Standards, in responding to the facts in a motion for summary judgment, "[e]ach denial shall be accompanied by a brief factual explanation and a specific reference to evidence in the record supporting the denial."  Practice Standards III.F.  The Court understands that in the FOIA context a citation to the record may not always be possible (*e.g.*, denying on the basis that something does not exist).  However, there must still be some articulable description to aid the Court in understanding the denial.  Plaintiff does not do that, so its denial of this fact is improperly made.

22.     The district court set aside the 2015 ROD decision on May 19, 2017, and LMJV appealed to the Tenth Circuit. *Id.* ¶ 11. That appeal was later dismissed.  *Id.*

23.     The parties dispute whether the Forest Service had anticipated litigation at the time of the 2008 settlement and whether that expectation was heightened after the loss on the merits in 2017. MSJ ¶ 23; Resp. ¶ 23.

24.     On July 19, 2018, the Rio Grande National Forest issued a new Draft ROD, approving access to LMJV's land through a right-of-way as opposed to a land exchange.  Sloan Decl. ¶ 12.

25.     Before the Draft ROD was issued, in connection with this new decision, Forest Service staff prepared a Biological Assessment ("BA").  *Id.*

26.     Forest Service staff also prepared a Supplemental Information Report ("SIR") to determine if the 2014 EIS required supplementation. *Id.*; ECF 52-4 at 1.

27.     The Forest Service also consulted with the U.S. Fish and Wildlife Service, which resulted in a Biological Opinion ("BO") issued on December 17, 2018.  Sloan Decl. ¶ 12.

28.     The Forest Service received objections to the Draft ROD, including objections from Plaintiff.  *Id.* ¶ 13.

29.     The objections were considered, and a response was issued on November 19, 2018.  *Id.*

30.     On February 27, 2019, the Rio Grande National Forest issued the Final ROD.  *Id.*

31.     On May 28, 2019, Plaintiff initiated a lawsuit challenging the Final ROD. *See Rocky Mountain Wild et al. v. Dallas et al.*, Case No. 19-cv-01512-CMA (D. Colo. filed May 28, 2019) (the "ongoing APA litigation").

**II.**     **Procedural History of Plaintiff's FOIA Request**

32.     On July 20, 2018, Plaintiff submitted a FOIA request to the Forest Service, Region 2, seeking a broad range of documents relating to the Village at Wolf Creek Access Project and the July 19, 2018 Draft ROD.  Sloan Decl. ¶ 16; Exh. A.

33.     On August 7, 2018, the Forest Service sent a letter to Plaintiff, acknowledging receipt of the request, seeking additional information to support Plaintiff's fee waiver request, and noting that the request had been assigned FOIA tracking number 2018-FS-R2-05258-F.  Sloan Decl. ¶ 17; Exh. B.

34.     The August 7, 2018 letter also noted that the FOIA request appeared to encompass communications among the Forest Service, USDA's Office of the General Counsel ("OGC"), and the United States Department of Justice ("DOJ") regarding the ongoing litigation involving Plaintiff and the agency.  Sloan Decl. ¶ 17; Exh. B at 3.

35.     The letter indicated that the Forest Service would construe the FOIA request not to include such documents, which would be subject to privilege and for which Plaintiff could expect to receive, at most, a large privilege log of records exempt from disclosure.  Sloan Decl. ¶ 17.  A large volume of documents was released in response to the FOIA request without assertion of any FOIA exemption.

36.     The August 7, 2018 letter also noted that the FOIA request was complex and that "exceptional circumstances" pursuant to 5 U.S.C. § 552(a)(6)(C) were present.  *Id.*

37.     Plaintiff responded to the Forest Service's inquiries by letter dated August 16, 2018.  *Id.* ¶ 18; Exh. C.

38.     Plaintiff's letter provided additional information in support of Plaintiff's fee waiver request. Sloan Decl. ¶ 18; Exh. C at 1–4.  The letter also confirmed that the FOIA request did

seek communications among the Forest Service, OGC, and DOJ relating to "any past or current litigation" and insisted that any assertion of privilege for such documents "must be supported within a lawful Vaughn index." Sloan Decl. ¶ 18; Exh. C at 5.

39.      The Forest Service sent Plaintiff two additional letters, both dated September 5, 2018. Sloan Decl. ¶ 19; Exh. D; Exh. E.

40.      The first letter granted Plaintiff's fee waiver request. Sloan Decl. ¶ 19; Exh. D at 2.

41.      Also, that letter repeated that "exceptional circumstances" pursuant to 5 U.S.C. § 552(a)(6)(C) were present, due to the complexity of the FOIA request. Sloan Decl. ¶ 19; Exh. D at 2.

42.      The second letter also stated that "exceptional circumstances" pursuant to 5 U.S.C. § 552(a)(6)(C) were present. Sloan Decl. ¶ 20; Exh. E at 4.

43.      Additionally, the second letter indicated that the Forest Service had assigned a separate tracking number for the portion of Plaintiff's FOIA request encompassing records that related to prior and ongoing litigation involving Plaintiff and the agency. Sloan Decl. ¶ 20; Exh. E at 1–3.

44.      Subsequently, however, the Forest Service decided to consider all portions of the FOIA request under the same, initially assigned tracking number, 2018-FS-R2-05258-F. Sloan Decl. ¶ 20.

**III.     Forest Service's Search**

45.      The Forest Service interpreted the FOIA request to encompass all Forest Service records relating to the Village at Wolf Creek Access Project. *Id.* ¶ 21.

46.      The Forest Service interpreted the FOIA request not to include any documents that Plaintiff had already received or had access to, including documents produced or filed in prior

litigations to which Plaintiff was a party, and documents made available to the public through Internet links or other means. *Id.*

47.     The Forest Service initially considered that the beginning cut-off date for documents in response to the FOIA request would be November 20, 2014. *Id.* ¶ 22.

48.     However, the Forest Service ultimately determined that an appropriate beginning cut-off date was May 22, 2015, because any documents dated prior to May 22, 2015 would likely be duplicative of documents Plaintiff had already received or been provided access to. *Id.*

49.     A broad selection of documents relating to the Wolf Creek project was previously produced not only in the administrative record in the prior APA case but in prior FOIA requests from 2014 to 2016. *Id.*

50.     The Forest Service initially considered that the end cut-off date for documents in response to this FOIA request would be July 20, 2018, the date of the request. *Id.* ¶ 23.

51.     Plaintiff objected to the July 20, 2018 cut-off date, and the Forest Service subsequently determined to extend the cut-off date for documents responsive to this search to March 1, 2019. *Id.*

52.     After the FOIA request was received, Ms. Sloan met with other Forest Service individuals multiple times to discuss the scope of the request and documents likely to be responsive and worked to identify those agency employees reasonably likely to have documents responsive to the FOIA request. *Id.* ¶ 24.

53.     Based on those conversations, the Forest Service identified the employees listed below because they had had an administrative or primary responsibility, or substantive involvement regarding the development, review, administrative review, and/or issuance of the 2018 Draft ROD and 2019 Final ROD. *Id.*

54.     It was determined that communications relating to the Village at Wolf Creek access project within the defined timeframe would have been routed through or originated by one or more of these listed individuals.   Consequently, those individuals would have records of documents relating to the project.  *Id.*

55.     The Forest Service identified the following twenty-seven individuals as those likely to have responsive records (the "custodians"): Brian Ferebee, Tammy Whittington, Jacque Buchanan, Dan Dallas, Tom Malecek, Jenna Sloan, Steve Lohr, Valerie Baca, E. Lynn Burkett, Jason Robertson, David Loomis, Bunni Maceo, Don Dressler, Deb Ryon, Patricia Hesch, Guy Blackwolf, Kenneth Tu, Lynne Hagen, Lawrence Lujan, Olga Troxel, Peter McDonald, Melissa Dressen, Oscar Martinez, Matthew Klein, Niccole Mortenson, Sara Beck, and Katie O'Conner. *Id.* ¶ 25.

56.     The records of each of the twenty-seven custodians were searched for documents potentially responsive to this FOIA request.  *Id.* ¶ 28.

57.     Custodians—or the individuals conducting searches on behalf of custodians—were instructed to search their records broadly, for "all agency communications and records pertaining to the Village at Wolf Creek ANILCA access project and decision from May 22, 2015 through March 1, 2019." *Id.* ¶ 33; Supplemental Declaration of Jenna Sloan ("Supp. Sloan Decl.") ¶ 14.

58.     Most of the custodians searched their own documents, using the search parameters they identified as most likely to identify potentially responsive documents, as the custodians themselves were best-positioned to know (i) where they would have potentially responsive documents in their files and (ii) what search parameters would be best aimed to locate those documents.  Sloan Decl. ¶ 29.

59.     The custodians' searches of their own files encompassed the following records systems and search terms:

A.     Bunni Maceo:

     i.     Records locations searched: Outlook/email

     ii.     Search terms used: "Wolf Creek"; "VWC"; "LMJV"

B.     Don Dressler:

     i.     Records locations searched: Hard copy permit files, C: drive, Outlook/emails

     ii.     Search terms used: "Wolf Creek"; "Village at Wolf Creek"; "Village at Wolf Creek Access Project"

C.     Deb Ryon:

     i.     Records locations searched: Hard copy files, computer Village at Wolf Creek file, Outlook/emails

     ii.     Search terms used: "VWC"; names of Forest Service employees involved in the Village at Wolf Creek access project

D.     Jason Robertson:

     i.     Records locations searched: Outlook/email and archives

     ii.     Search terms used: "Wolf Creek"; "Wolf"

E.     Jenna Sloan:

     i.     Records locations searched: Hard copy files, computer hard drive, Outlook/email

     ii.     Search terms used: "WCV"; "Wolf Creek"; "Village at Wolf Creek"

F.     Kenneth Tu:

     i.     Records locations searched: Notebook, computer hard drive, Outlook/email

     ii.     Search terms used: Mr. Tu individually reviewed documents that he located that were potentially related to the Village at Wolf Creek access

project and provided them to be processed and reviewed as part of the FOIA response as appropriate.

G.   Lynne Hagen:

   i.   Records locations searched: Hard copy files, Outlook/email, email archive, Pinyon (a file management system used by the Forest Service in some instances), C: drive

   ii.   Search terms used: Ms. Hagen did not apply individual search terms as her documents relating to the Village at Wolf Creek access project were organized into specific folders in various locations. She provided all documents from those locations to be processed and reviewed as part of the FOIA response.

H.   Lawrence Lujan:

   i.   Records locations searched: Outlook/email, computer system, Pinyon

   ii.   Search terms used: "Village at Wolf Creek access project"

I.   Patricia Hesch:

   i.   Records locations searched: Outlook/email, folders titled "5430 Land Exchange/Wolf Creek" and "Documents/Wolf Creek"

   ii.   Search terms used: "Wolf Creek"

J.   Peter McDonald:

   i.   Records locations searched: Hard drive folder dedicated to the Wolf Creek project; Outlook/email folder dedicated to the Wolf Creek project; Pinyon folder dedicated to the Wolf Creek project

   ii.   Search terms used: Mr. McDonald applied search terms for an earlier search, but his search performed in March 2019 did not use keyword searches because he knew where in his files potentially responsive documents would have been stored, and he provided all the files from those locations.

K.   Steve Lohr:

   i.   Records locations searched: Outlook/email, computer

   ii.   Search terms used: "Wolf Creek"; "Leavell-McCombs Joint Venture"

L.     Valerie Baca:

     i.     Records locations searched: Outlook/email, computer system

     ii.     Search terms used: "Village at Wolf Creek Access Project"; "VWC"; "Wolf Creek"

M.     Olga Troxel:

     i.     Records locations searched: Outlook/email, C: drive folder titled "C:\WorkSpace\RODetail2018\WolfCreek"

     ii.     Search terms used: "VWC"; "Wolf Creek"; "Village at Wolf Creek"

N.     Melissa Dressen:

     i.     Records locations searched: Outlook/email, computer hard drive

     ii.     Search terms used: "Wolf Creek", names of Appeal Team members

O.     Katie O'Connor:

     i.     Records locations searched: Outlook/email, computer hard drive

     ii.     Search terms used: "Wolf Creek"

P.     Guy Blackwolf:

     i.     Records locations searched: Outlook/email via Proofpoint

     ii.     Search terms used: Mr. Blackwolf did not use search terms, but did a search of his records that did not identify any potentially responsive records that would have been unique—that is, not present in the records of other custodians for this FOIA response.

Q.     E. Lynn Burkett:

     i.     Records locations searched: Hard copy records, Outlook/email

     ii.     Search terms used: "Wolf Creek"

R.     Matthew Klein:

     i.     Records locations searched: laptop PC, Outlook/email

        ii.     Search terms used: "Wolf"; "RART"; "Capps"; "Troxel"; "Martinez"; "Oscar"

   S.    Niccole Mortenson:

        i.      Records locations searched: Hard drive, Outlook/emails

        ii.     Search terms used: "Wolf Creek"; "Response"; date ranges of administrative review

   T.    Oscar Martinez:

        i.      Records locations searched: Word documents, Outlook/emails

        ii.     Search terms used: "Wolf Creek"; "RART"

*Id.* ¶ 1–2, 30; Supp. Sloan Decl. ¶ 2.[4]

60.    David Loomis also did a search, which identified no responsive documents.  Sloan Decl. ¶ 31.

61.    Brian Ferebee, Jacque Buchanan, Tammy Whittington, Dan Dallas, and Tom Malecek delegated the task of searching their records to their administrative assistants.  Sloan Decl. ¶ 32.

62.    The review of Mr. Ferebee, Ms. Buchanan, Ms. Whittington, Mr. Dallas, and Mr. Malecek's files encompassed the following records systems and search terms:

   U.    Brian Ferebee:

        i.      Records locations searched: Computer and Outlook/emails

        ii.     Search terms used: "Village at Wolf Creek"; "Record of Decision"; "Village"; "Wolf Creek"; "ANILCA"

   V.    Jacque Buchanan:

        i.      Records locations searched: Computer and Outlook/emails

---

[4] The Court notes that not all persons identified in the *Vaughn* index conducted a search for potentially responsive records.  ECF 49-1, 49-2 at ¶ 25, 49-11.  The Court also notes that Sara Beck, a Forest Planner and Environmental Coordinator in Fort Collins, Colorado, was identified as a custodian, but the information related to her search was not provided to the Court.  Neither party addresses her absence from the list.

ii.    Search terms used: "Wolf Creek"; "Village at Wolf Creek ANILCA"

W.    Tammy Whittington:

i.    Records locations searched: Computer and Outlook/emails

ii.    Search terms used: "Wolf Creek"; "LMJV"; "ANILCA"; "Village at Wolf Creek ANILCA"

X.    Dan Dallas:

i.    Records locations searched: Computer/Outlook via Proofpoint Enterprise Archive, Outlook via workstation

ii.    Search terms used: "Village at Wolf Creek"; "Wolf Creek"; "VWC"; "WCV"; "Red McCombs"; "McCombs"; "Clint Jones"; "Dusty Hicks"; "LMJV"; "Leavell-McCombs Joint Venture"; "Leavell-McCombs"; "USFWS"; "FWS"; "CPW"; "Colorado Parks and Wildlife"; "Regional Office"; "RO"; "CDOT"; "Colorado Department of Transportation"

Y.    Tom Malecek:

i.    Records locations searched: Computer/Outlook via Proofpoint Enterprise Archive

ii.    Search terms used: "Village at Wolf Creek"; "Wolf Creek"; "VWC"; "WCV"; "Red McCombs"; "McCombs"; "Clint Jones"; "Dusty Hicks"; "LMJV"; "Leavell-McCombs Joint Venture"; "Leavell-McCombs"; "USFWS"; "FWS"; "CPW"; "Colorado Parks and Wildlife"; "Regional Office"; "RO"; "CDOT"; "Colorado Department of Transportation"

*Id.*

63.    Most custodians conducted two separate rounds of searches.  *Id.* ¶ 35.

64.    All of the twenty-seven custodians' files were searched after March 1, 2019, the end cut-off date for documents responsive to the FOIA request.  *Id.*

65.    The searches of the custodians' records were conducted in a manner likely to identify responsive records.  *Id.* ¶¶ 28, 35.

66.     Potentially responsive documents located in the searches of custodians' records were saved electronically, in folders on a shared location on the Forest Service's Pinyon content-management system, organized by the custodians' last names.  *Id.* ¶ 36.

67.     The identified potentially responsive documents were processed and converted to PDF format using FOIAXpress, the system the Forest Service typically uses to process FOIA requests.  *Id.* ¶¶ 37–38.

68.     Following review of the documents, the Forest Service determined that no other custodians should be searched, as their records were not reasonably likely to contain unique documents not already captured by the searches the identified custodians had performed.  *Id*. ¶ 39.

69.     The searches the Forest Service conducted identified those individuals and locations reasonably likely to contain records responsive to Plaintiff's FOIA request.[5]  *Id.* ¶ 42.

## IV.     Forest Service Review and Production of Documents

70.     The Forest Service's process of reviewing documents in response to the FOIA request involved multiple steps and a team of reviewers.  *Id.* ¶ 42.

71.     The review team sifted through the identified potentially responsive documents to eliminate documents not responsive to the FOIA request.[6]  *Id.*

72.     The review team endeavored to remove documents that, as evident on their face, had previously been produced to Plaintiff or otherwise made publicly available.  *Id.*

73.     The review team also reviewed documents for the applicability of any FOIA exemptions, and applied redactions to all or parts of the pages of each document.  *Id.* ¶ 43.

---

[5] *See* Footnote 3, *supra*.
[6] *Id.*

74.     As part of the Forest Service's review process, reviewers endeavored to cull documents that were outside the timeframe of between May 22, 2015 and March 1, 2019.  *Id.* ¶ 44.

75.     A significant number of documents dated before May 22, 2015 were ultimately included in the productions, due at least in part to older documents and communications being attached to communications that did fall within the relevant timeframe.  *Id.*

76.     The documents responsive to the FOIA request were reviewed to ensure that all reasonably segregable information not subject to a FOIA exemption had been released in the documents produced to Plaintiff.[7]  *Id.* ¶ 57.

77.     Between March 2019 and March 2020, the Forest Service made twenty-seven rolling document productions to Plaintiff.  *Id.* ¶ 46; Exh. F.

78.     The Forest Service provided Plaintiff with amended, replacement productions for two of the rolling productions shortly after it was discovered that exempt material had been inadvertently included without proper redactions.[8]  Sloan Decl. ¶ 47; Exh. G.

79.     Following the Court's order of April 23, 2019 that the Forest Service increase its pace of productions, each of the Forest Service's biweekly rolling productions included at least 6,000 pages, some of which were previously released agency records and copies of the same document.  Sloan Decl. ¶ 48; *see* ECF 29-30, 32, 36-12, 36-13.

80.     In light of the large volume of documents at issue, and the fact that a significant proportion of those documents involved the application of one or more privileges, the Forest Service engaged an experienced, qualified outside contractor to assist with preparing the final *Vaughn* index in this matter.  Sloan Decl. ¶ 50; Supp. Sloan Decl. ¶ 28.

---

[7] *Id.*
[8] Plaintiff disputes the use of the word "inadvertent" in this fact.  For why inadvertent is appropriately used, see this Court's prior order at ECF 41 at 2.

81.     As part of that process, the Forest Service also asked the contractor to review the documents that had been produced once more, to determine whether any redactions that were applied to the documents when they were initially produced should be reduced or removed. Sloan Decl. ¶ 50.

82.     As part of the contractor's review, the previously produced documents were loaded into a document review platform and analyzed to identify duplicate and near-duplicate documents.  *Id.* ¶ 51.  The contractor also reviewed previously produced documents and reduced or removed redactions when it deemed appropriate to do so.  *Id.* ¶¶ 52–53; Supp. Sloan Decl. ¶ 27; ECF 49-2 at ¶¶ 52–53.

83.     Identifying duplicate documents was meant to ensure that FOIA exemptions were being asserted consistently across duplicate and near-duplicate documents.[9]  Sloan Decl. ¶ 51.

84.     In consultation with Forest Service individuals and attorneys for Defendants, the contractor reviewed the previously produced documents and reduced or removed redactions where it was deemed appropriate to do so.  *Id.* ¶ 52; Supp. Sloan Decl. ¶ 27.

85.     When it was not deemed appropriate to reduce or remove redactions from the previously produced documents, the contractor was instructed to reproduce the original redactions on the documents in the document review platform, such that the same information that was redacted when the document was initially produced would be redacted in the reproduction.  Sloan Decl. ¶ 53.

86.     On September 10, 2020, the Forest Service reproduced to Plaintiff, although not entirely in a searchable format, all of the documents that had previously been included in the rolling productions in response to the FOIA request.[10]  *Id.* ¶ 54; Exh. H.

---

[9] *See* Footnote 3, *supra.*

87.     The September 10, 2020 reproduction included the documents for which it had been determined that the redactions applied when the documents were initially produced should be reduced or removed.  Sloan Decl. ¶ 54.

88.     After the completion of the rolling productions in March 2020, Plaintiff first raised a concern about the documents having been produced as combined PDFs.[11]  *Id.* ¶ 54.

89.     The September 10, 2020 reproduction included each document as an individual, non-searchable PDF file.  *Id.*; Supp. Sloan Decl. ¶¶ 20, 22–24.

90.     The September 10, 2020 reproduction also included two pages that were inadvertently omitted from the prior rolling productions.[12]  Sloan Decl. ¶ 55; Exh. H.

91.     In total, including redactions, the Forest Service has produced 14,740 documents encompassing 140,637 pages to Plaintiff in response to the FOIA request. Sloan Decl. ¶ 55.

## V.     FOIA Exemptions

92.     In the course of the review of documents responsive to the FOIA request, the government determined that certain information responsive to the request should be withheld under FOIA Exemptions 2, 4, 5, and 6.  *Id.* ¶ 58.

93.     The Forest Service redacted agency telephone conference numbers and passcodes pursuant to Exemptions 2 and 5.  *Id.* ¶ 59.

94.     The Forest Service believes that the internal agency teleconference numbers and passcodes are exempt from disclosure pursuant to the commercial information privilege under Exemption 5.  *Id.* ¶ 64.

---

[10] "[I]n the interest of cooperation," Defendant produced these documents to Plaintiff in searchable format on February 4, 2021.  ECF 60.

[11] Plaintiff's opposition to this fact cites Exhibit 5 which is a series of emails between the parties' counsel.  Those emails concern the searchability of the PDFs as opposed to the combination of documents into PDFs.

[12] *See* Footnote 8, *supra*.

95.     The agency teleconference numbers and passcodes are shared internally for the purpose of conducting official government business.  *Id*. ¶ 64.

96.     Release of the agency teleconference numbers and passcodes would harm the government's financial interest in maintaining the integrity of the commercial telephonic systems it contracts for.  *Id.*

97.     The parties dispute whether these teleconference numbers and passcodes relate solely to internal agency practices and whether they are of little to no public interest.  MSJ ¶ 97; Resp. ¶ 97.

98.     Disclosure of these numbers could allow individuals outside the agency to dial into the agency's telephone conference system and obtain unauthorized access to agency information and disrupt agency operations.[13]  Sloan Decl. ¶ 64.

99.     The Forest Service also redacted confidential commercial and financial information from a small number of documents, including corporate bank account numbers, estimated insurance premiums, and information provided in connection with billing statements from Plaintiff's counsel, pursuant to Exemption 4.  *Id.* ¶ 60.

100.    Consistent with the broad scope of the FOIA request and as a result of Plaintiff's request to include documents created in the course of litigation, a large number of documents were withheld in full or in part pursuant to the attorney-client privilege and/or work product protection under Exemption 5.  *See id.* ¶¶ 17–18, 62–63, 72; Exh. C; Exh. I.

101.    The records withheld pursuant to Exemption 5 constitute inter- or intra-agency documents because they were shared within the Forest Service or with other government agencies.  *Id.* ¶ 65.

---

[13] *See* Footnote 3, *supra*.

102.    As indicated on the *Vaughn* index, records withheld pursuant to Exemption 5 were not shared with any non-government persons, other than the contractor hired by the Forest Service to assist with the preparation of the *Vaughn* index.  Sloan Decl. ¶ 65; Supp. Sloan Decl. ¶¶ 29–30.

103.    Many, but not all, documents were withheld for both attorney-client privilege and work product.  Sloan Decl. ¶ 63; Exh. I.

104.    The information withheld pursuant to the attorney-client privilege consists largely of: (i) communications among Forest Service personnel, OGC attorneys, and/or DOJ attorneys in the course of seeking or providing the attorney's legal advice, or seeking or providing information necessary to provide legal advice; and (ii) documents reflecting OGC and/or DOJ attorneys' legal advice in the form of comments or drafts.  Sloan Decl. ¶ 62; Hagen Decl. ¶ 9; Exhibit I.

105.    Defendant asserts that disclosure of the material withheld pursuant to the privilege would reveal confidential, attorney-client privileged information.  Sloan Decl. ¶ 62.

106.    A significant number of draft documents, and communications relating to draft documents, were redacted for work product as they were prepared by, or at the direction or supervision of, attorneys in the context of ongoing or foreseeable litigation under the APA and/or FOIA.  Sloan Decl. ¶ 63; Hagen Decl. ¶¶ 7–11; Exh. I.

107.    The *Vaughn* index indicates that the documents withheld in part or in whole as protected work product were prepared by or at the direction or under the supervision of an attorney, in the course of ongoing or anticipated foreseeable litigation.  Sloan Decl. ¶ 63; Exh. I.

108.    The Forest Service contends that disclosures of the material withheld as work product would reveal attorney mental impressions and factual work product.  Sloan Decl. ¶ 63; Hagen Decl. ¶¶ 8–9, 11.

109.    The Forest Service has redacted personal information including individuals' home addresses, personal telephone numbers, personal email addresses, usernames and passwords, and taxpayer identification numbers, pursuant to Exemption 6.  Sloan Decl. ¶ 66; Exh. I.

110.    Defendant believes that disclosure of this information would serve little to no public interest and would constitute an unwarranted invasion of the individuals' privacy.  Sloan Decl. ¶ 66.

111.    In total, 7,757 documents were withheld in whole or in part pursuant to one or more FOIA exemptions.  *Id.* ¶ 67.

112.    After the review of documents by the Forest Service and the contractor, the Forest Service proffers that no additional meaningful, non-exempt information contained in the documents can be disclosed.  *Id.* ¶ 75.

113.    Throughout its response to the FOIA request, the Forest Service has endeavored to address issues raised by Plaintiff where possible.  *Id.*

114.    In an effort to address issues the Forest Service believed were raised by Plaintiff, among other things, the Forest Service extended the end cut-off date of the search by several months, considered the FOIA request under a single tracking number, reproduced all previously produced documents to Plaintiff as individual PDFs, and included information on the *Vaughn* index consistent with Plaintiff's expressed preferences.  *Id.* ¶¶ 75–76.

115.    The Forest Service's efforts to accommodate Plaintiff's request and concerns throughout this process have substantially increased the effort and resources required to produce documents and a *Vaughn* index in connection with this FOIA request.  *Id.* ¶ 77.

## LEGAL STANDARDS

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the Court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."); *see also Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may

be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'"   *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324).   "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, i.e., the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005).   Where, as here, the Court is presented with cross-motions for summary judgment, the Court "must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *United States v. Supreme Court of New Mexico*, 839 F.3d 888, 907 (10th Cir. 2016) (internal quotations omitted).

## ANALYSIS

Plaintiff disputes both the adequacy of Defendant's search for responsive documents and Defendant's specific withholdings of the documents it provided.   The Court will begin with a discussion of FOIA generally, followed by an examination of the reasonableness of the search, and ending with whether Defendant properly withheld the contested information pursuant to FOIA's Exemptions 2, 4, 5, and 6.

**I.     FOIA**

FOIA "generally provides that the public has a right of access, enforceable in court, to federal agency records, subject to nine specific exemptions." *Anderson v. U.S. Dep't of Health & Human Serv.*, 907 F.2d 936, 941 (10th Cir. 1990); *see also Milner v. Dep't of Navy*, 562 U.S. 562, 564 (2011) ("(FOIA) requires federal agencies to make Government records available to the public, subject to nine exemptions for specific categories of material.").   It provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record

after deletion of the portions which are exempt." 5 U.S.C. § 552(b).  A district court in any FOIA action challenging an agency decision to withhold records reviews the agency's decision not to disclose *de novo*, *Herrick v. Garvey*, 298 F.3d 1184, 1189 (10th Cir. 2002), reading the act broadly in favor of disclosure and construing its exemptions narrowly. *Hull v. I.R.S., U.S. Dep't of Treasury*, 656 F.3d 1174, 1177 (10th Cir. 2011); *Anderson*, 907 F.2d at 941. When considering motions for summary judgment in the FOIA context, "if a review of the record raises substantial doubt, particularly in view of well defined requests and positive indications of overlooked materials, summary judgment is inappropriate." *Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999).

## II.     Whether Defendant's Declarations Are Entitled to Substantial Weight

"If an agency has been sued by an individual because the agency has refused to release documents, the agency 'bears the burden of justifying nondisclosure.'" *Herrick*, 298 F.3d at 1189 (quoting *Anderson*, 907 F.2d at 941); *San Juan Citizens All. v. U.S. Dep't of the Interior*, 70 F. Supp. 3d 1214, 1218 (D. Colo. 2014) ("The burden is on the government to justify its decision to withhold or redact documents.").  "To satisfy its burden of proof under FOIA, an agency typically submits affidavits." *Hull*, 656 F.3d 1174, 1177 (10th Cir. 2011).

> [A]ffidavits must show, with reasonable specificity, why the documents fall within the exemption. The affidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping. If the affidavits provide specific information sufficient to place the documents within the exemption category, if the information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate.

*Id.* (quoting *Quiñon v. FBI*, 86 F.3d 1222, 1227 (D.C. Cir. 1996)).

In addition to affidavits, an agency may submit a *Vaughn* index. "A *Vaughn* index is a compilation prepared by the government agency . . . listing each of the withheld documents and

explaining the asserted reason for its nondisclosure." *Id.* at 1178 n.2 (quoting *Anderson*, 907 F.2d at 940 n.3). "A *Vaughn* index must be adequately detailed to permit the court to determine whether a sufficient factual basis exists to support the agency's refusal to disclose the information at issue." *Rocky Mountain Wild, Inc. v. United States Forest Service*, 138 F. Supp. 3d 1216, 1223 (D. Colo. 2015) (quoting *Anderson*, 907 F.2d at 941). Like with the affidavits, if the *Vaughn* index is reasonably clear, specific, and detailed, it is accorded substantial weight. *Rocky Mountain Wild, Inc. v. United States Bureau. of Land Mgmt.*, 455 F. Supp. 3d 1005, 1030 (D. Colo. 2020) (citation omitted) (hereafter, "*BLM* Case").

Defendant argues that its affidavits and *Vaughn* index are entitled to a presumption of good faith and to be afforded substantial weight. MSJ at 23. Plaintiff raises several arguments against affording the affidavits any amount of deference. First, Plaintiff cautions the Court that "[c]aselaw applying agency-deferential standards must be relied upon with great care, if at all." Resp. at 19. Plaintiff cites to an Eleventh Circuit case that held that Congress "approved of deference within the specific context of" certain FOIA Exemptions not at issue here. *Broward Bulldog, Inc. v. U.S. Dep't of Justice*, 939 F.3d 1164, 1183 (11th Cir. 2019). However, that case did not preclude the presumption of good faith as to other Exemptions. In fact, numerous other cases have given weight to an agency's affidavits when considering other Exemptions. *See, e.g.*, *Al-Turki v. DOJ*, 175 F. Supp. 3d 1153, 1170, 1176–77 (D. Colo. 2016).

Second, Plaintiff proffers that courts "have recognized that the Department of Justice has increasingly aided federal agencies who engage in various evasive games, instead of ensuring agencies maintain fidelity to FOIA's legislative purpose that charges federal employees with ensuring citizens are able to use FOIA to know what their government is up to." Resp. at 20–21. Plaintiff does not further explain how the DOJ has allegedly aided the Forest Service in "evasive

games" in this case nor articulated a reason for why, as a general mater, an increase in aid to federal agencies in supposed "evasive games" warrants a finding that an agency's declarations should not be given substantial weight.  Without further support, the Court finds Plaintiff's argument here unpersuasive.

Third, Plaintiff avers that Defendant has not brought its affidavits in good faith; instead, Plaintiff argues that Defendant has engaged in a series of bad faith acts.  One such alleged act is Defendant's September 10, 2020 reproduction of documents in a non-text searchable format. Resp. ¶ 86 ("Producing non-searchable records that were once searchable is evidence of agency bad faith.").  Plaintiff does not cite a single case for the proposition that failure to produce records in a searchable format constitutes bad faith such that affidavits submitted by the agency should not be given substantial weight.  Even if it had, this argument is likely a moot issue since Defendant, "in the interest of cooperation and efficiency," voluntarily reproduced the September 10, 2020 reproduction in a searchable format.  ECF 60.

Another of Plaintiff's allegations of Defendant's alleged bad faith is the contention that David Loomis possessed no agency records while preparing a *Vaughn* index that withheld dozens of records involving Mr. Loomis.  Resp. ¶ 60.  Specifically, Plaintiff argues that "[i]t is troubling that David Loomis, who clearly possesses responsive records, 'did not identify any potentially responsive documents.'" Plaintiff's Reply in Support of Cross MSJ ("Reply") at 13 (internal citation and quotation omitted).  In so arguing, Plaintiff identified roughly 231 instances in which Mr. Loomis' names appeared on the *Vaughn* index.  Resp. ¶ 60.  Of those, only one showed a communication in which no other custodian was also identified.  Without more, the Court finds that Plaintiff's belief that Mr. Loomis should have had more responsive documents is a "purely speculative claim[ ] about the existence and discoverability of other documents."

*SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). As such, Plaintiff's assertion cannot be used to rebut the presumption of good faith accorded to the Forest Service's affidavits. *Id.*

Plaintiff also suggests that Defendant's demand for Plaintiff to narrow its request to exclude documents created in the course of litigation is an act of bad faith. Resp. ¶ 100. Plaintiff explains that "[l]itigation records are regularly requested from all levels of the federal government, including the files of litigating attorneys in the Department of Justice." *Id.* However, that explanation does not, on its face, provide the Court with insight as to why Defendant's actions were in bad faith. Plaintiff cites to a document in another filing (ECF 36-13), but the cited excerpt merely reflects that a custodian looked for records in a specific location because that is where is the custodian believed that relevant information would be located. Resp. ¶ 100; *see* Sloan Decl. ¶ 33. Again, this does nothing to convince the Court of Defendant's purported bad faith.

Plaintiff's fourth argument on bad faith is that Defendant acted in bad faith by not designating additional custodians. Resp. at 22. Plaintiff provides no further explanation for why an alleged failure to designate additional custodians is per se bad faith on the part of Defendant. Regardless, as described elsewhere in this Order, the Court finds Defendant's use and choice of custodians reasonable, so there is no bad faith on this point.

Finally, Plaintiff contends that "[t]he arbitrary and capricious actions and circumstances surrounding the Forest Service handling of the FOIA request increased the time and effort required for FOIA compliance and is part of a pattern of delaying production until after the agency action has completed." Resp. ¶ 115. Such an assertion concerns claims that are no longer active in this case, but for which "Plaintiff reserves the right to revive . . . based on

previously withheld records released with summary judgment filings."   Resp. ¶ 115 n.1. Regardless of whether such arguments are appropriately raised here without live claims, for the reasons described elsewhere, the Court finds that Defendant has acted reasonably.  As such, this catch-all argument of arbitrary and capricious does not convince the Court of bad faith.

Although Plaintiff does not specifically challenge the sufficiency of the affidavits themselves, the Court considers for itself whether they are adequately submitted for review.  In the context of FOIA, "personal knowledge" is satisfied if the declarant "attests to [her] personal knowledge of the procedures used in handling a FOIA request and [her] familiarity with the documents in question."  *Barnard v. U.S. Dep't of Homeland Sec.*, 531 F. Supp. 2d 131, 138 (D.D.C. 2008); *Schoenman v. FBI*, 575 F. Supp. 2d 166, 171 (D.D.C. 2008); *see also Carter, Fullerton & Hayes LLC v. FTC*, 520 F. Supp. 2d 134, 146 (D.D.C. 2007) ("The declaration of an agency official who is knowledgeable about the way in which information is processed and is familiar with the documents at issue satisfies the personal knowledge requirement.").  Based on the explanation Ms. Sloan and Ms. Hagen provided in paragraphs five and three, respectively, of their declarations, their averments satisfy the personal knowledge requirement.  The Court also notes that caselaw holds that a declarant's reliance on information gathered from other sources in a FOIA case does not amount to inadmissible hearsay.  *See, e.g., DiBacco v. Dep't of the Army*, 926 F.3d 827, 833 (D.C. Cir. 2019) ("[A]lthough some of the information was relayed to [the declarant] by her subordinates, declarations in FOIA cases may include such information without running afoul of Rule 56."); *Carney v. DOJ*, 19 F.3d 807, 814 (2d Cir. 1994) ("An affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy Rule 56(e); there is no need for the agency to supply affidavits from each individual who participated in the actual search." (citations omitted)).

**III.    Whether Defendant's Search Was Reasonable**

Plaintiff challenges the reasonableness of Defendant's search on four primary grounds. First, the search improperly excluded offices and employees likely to have responsive records. Resp. at 22–25.   Second, Defendant used unreasonably narrow search terms.   *Id.* at 25–28. Third, Defendant's search locations were arbitrary.   *Id.* at 28–30.   Fourth, Defendant's temporal date range was unreasonably narrow.   *Id.* at 30–32.   Defendant rejects all these contentions.   The Court will address each in turn.

A.    Offices and Employees Likely to Have Responsive Records

FOIA's reasonableness standard "does not require [an agency] to search every record system or to demonstrate that no other potentially responsive documents might exist." *Rocky Mountain Wild, Inc.*, 138 F. Supp. 3d at 1221.   However, an agency must "show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."   *Id.* (quoting *Oglesby*, 920 F.2d at 68).   As a result, if the agency knows or reasonably believes that another office "has or is likely to have responsive documents[,]" *Friends of Blackwater v. U.S. Dep't of the Interior*, 391 F. Supp. 2d 115, 121 (D.D.C. 2005) (quoting 43 C.F.R. § 2.22(a)(1)), the agency must forward along the request.   A search becomes inadequate if an agency fails to pursue "clear leads" indicating that other individuals or offices should be searched.   *See Coleman v. Drug Enforcement Admin.*, 134 F. Supp. 3d 294, 301–02 (D.D.C. 2015). Conversely, "[s]peculative claims about the existence of additional documents are insufficient to rebut the presumption of good faith."   *Id.* at 301 (internal quotation marks omitted).

Plaintiff asked for "[r]esponsive records [that] may be maintained in various levels of the [Forest Service's] organizational structure, including the Local Offices, State and Regional

Offices, Office of General Counsel, and Washington D.C. Offices." ECF 49-3 at 1. Plaintiff contends that Defendant's submitted affidavits do not identify any search conducted across those offices, "particularly the Office of General Counsel and the Washington D.C. Offices." Resp. at 22. For support that Defendant has not carried its summary judgment burden, Plaintiff cites to *Information Network for Responsible Min. v. Bureau of Land Management*, 611 F. Supp. 2d 1178, 1185 (D. Colo. 2009) (hereafter, "*Inform* Case") and the *BLM* Case.

In the *Inform* Case, the court held that the agency's search was unreasonable, in part, because the submitted declarations provided "no indication that the agency made any effort to determine whether [agency] personnel in any other office . . . participated in the agency's decision-making regarding the [program at issue] and thus may have responsive records in their control or possession." 611 F. Supp. 2d at 1185. Similarly, in the *BLM* Case, the court found the defendant's search unreasonable because it had "not presented any evidence showing that it took steps to determine whether employees in the Washington, D.C. office posess[ed] documents." 455 F. Supp. 3d at 1026.

This case is materially different. Of Defendant's identified custodians, one, Katie O'Conner, was a communications director in the Forest Service's Washington D.C. office and conducted a search of potentially responsive documents. Sloan Decl. ¶¶ 25(aa), 30(o). The custodian selection process included conversations with various Forest Service individuals who determined that "communications relating to the Village at Wolf Creek access project within the defined timeframe would have been routed through or originated by one or more of" the custodians. *Id.* ¶ 24. Specifically, the custodians were identified because they were determined "has having an administrative or primary responsibility, or substantive involvement regarding the development, review, administrative review, and/or issuance of the 2018 Draft ROD and 2019

Final ROD." *Id.*  The supplemental affidavit further describes that "employees of the Forest Service's Washington Office and other National Forest or Regional Offices were not reasonably likely to have unique responsive documents."  Supp. Sloan. Decl. ¶ 4.  Although this presumably includes the OGC as well, documents related to OGC attorneys were clearly collected (even if withheld).  *See, e.g.*, Exh. I at 1 ("Draft objection responses, prepared at the direction of OGC attorney, in the context of ongoing APA litigation.").  For these reasons, the Court does not find Defendant's search unreasonable for not including more custodians from other offices.

Plaintiff also argues that Defendant's search was unreasonable because it either did not include the following individuals as custodians or otherwise produce records from them: Maribeth Gustafson, Guy Blackwolf, Davis Loomis, Adam Mendonca, Jason Marks, Jarhid Brown, Jim Bedwell, Gary Hanna, Thomas Tidwell, Mike Blakeman, and Martha Williamson. Resp. at 23–25.  Mr. Loomis (as the Court described earlier) and Mr. Blackwolf did conduct searches; they simply did not identify responsive documents.  Sloan Decl. ¶¶ 30(p), 31.  Plaintiff is specifically alarmed by the absence of Ms. Gustafson, as she is allegedly "one of the central figures who discussed . . . information with LMJV."  Reply at 25.  Defendant responds that Ms. Gustafson retired from her position as Deputy Regional Forester in January 2018.  Supp. Sloan Decl. ¶ 6.  Ms. Whittington replaced her, and Ms. Whittington's records were searched.  *Id.* Additionally, Ms. Gustafson provided records in the prior APA case.  *Id.*  Defendant's supplemental declaration provides similar explanations as to the remaining individuals.  Supp. Sloan Decl. ¶¶ 5–13.  These explanations satisfy the Court that Defendant has met its burden.

Also, Plaintiff objects to the use of assistants to search for records on behalf of Mr. Ferebee, Ms. Buchanan, Ms. Whittington, Mr. Dallas, and Mr. Malecek.  Reply at 25–26. Plaintiff cites no case for the notion that it is per se unreasonable to use an assistant to search for

records.  Instead, Plaintiff asks the Court to make the assumption that the individuals, as opposed to the administrative assistants, were better placed to know where to search for responsive documents.  But it is equally likely that administrative assistants may be better suited to know where to look for responsive documents.  This tension must be resolved in Defendant's favor since substantial weight is given to the good faith declaration stating that "custodians themselves were best-positioned to know (i) where they would have potentially responsive documents." Sloan Decl. ¶ 29.  If that meant that the custodian believed that delegating the task to an assistant was better, so be it.  The Court is unconvinced that Defendant has failed to satisfy its burden simply by allowing custodians to delegate the task of searching to their assistants.

Finally, the Court notes that Plaintiff seems to be in disbelief that certain custodians did not produce any responsive records in this case.  Yet, it is not true that every custodian must produce responsive documents.  They were selected because there were "*likely* to have responsive records." Sloan Decl. ¶ 25 (emphasis added).  The standard by which the Court must judge Defendant's search is "not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate."  *Trentadue v. F.B.I.*, 572 F.3d 794, 797 (10th Cir. 2009).  Based on the substantial weight afforded Defendant's declarations, the Court finds that Defendant has met its burden of reasonableness in the context of its selection of custodians.

B.    Search Terms

"In general, federal agencies have discretion in crafting a list of search terms that they believe to be reasonably tailored to uncover documents responsive to the FOIA request." *Coffey v. Bureau of Land Mgmt.*, 277 F. Supp. 3d 1, 9 (D.D.C. 2017) (internal quotation marks and brackets omitted). If an agency's "search terms are reasonably calculated to lead to responsive

documents," courts "should not micro manage the agency's search." *Id.* (internal quotation marks omitted). "A FOIA petitioner cannot dictate the search terms for his or her FOIA request." *Canning v. U.S. Dep't of Justice*, No. 11-1295 (GK), 2017 WL 2438765, at *4 (D.D.C. June 5, 2017) (quoting *Bigwood v. U.S. Dep't of Def.*, 132 F. Supp. 3d 124, 140 (D.D.C. 2015)). Yet, "[t]he requester should not have to score a direct hit on the records sought based on the precise phrasing of [the] request. Rather the agency must liberally interpret the request and frame its search accordingly." *Gov't Accountability Project v. United States Dep't of Homeland Sec.*, 335 F. Supp. 3d 7, 12 (D.D.C. 2018).

Plaintiff objects to Defendant's search terms on four grounds. First, some terms used in Plaintiff's request were not consistently searched. Second, Plaintiff challenges the allowance of each custodian to subjectively choose their own search terms. Third, Defendant did not use sophisticated methods of searching. Fourth, the search fails to ensure that all records created and obtained by each custodian are collected and disclosed. Resp. at 28.

Despite arguing otherwise, *see* Reply at 15, Plaintiff does not identify any specific authority for the notion that all records custodians must use the same search terms. To the contrary, Defendant cites a case that supports the notion that different custodians may use different search terms that are "designed to elicit responsive records." *Judicial Watch, Inc. v. Dep't of State*, 177 F. Supp. 3d 450, 458 (D.D.C. 2016). Additionally, although custodians may have used different search terms, they were all provided with the same instruction; that is, they "were instructed to search for 'all agency communications and records pertaining to the Village at Wolf Creek ANILCA access project and decision from May 22, 2015 through March 1, 2019." Sloan Decl. ¶ 33. Given Plaintiff's broad request for a large volume of potentially responsive documents, Defendant chose to let those who were most familiar with the terms and phrases used

in their own documents and communications to identify the search terms reasonably likely to identify responsive documents. *Id.* ¶¶ 29–30, 32; Supp. Sloan Decl. ¶ 15. Plaintiff has cited no authority to suggest that such actions are prohibited; accordingly, the Court finds Plaintiff's first two arguments unavailing.

Plaintiff's next argument is that Defendant's search terms were unreasonable because Defendant did not include (or describe if it did include) sophisticated search terms like Boolean operators and connectors. Plaintiff essentially asks the Court to make an assumption here; namely, because Defendant did not use search terms using things like Boolean operators that the search was patently unreasonable. None of the cases cited by Plaintiff stand for that proposition. Based on the good faith afforded to the declarations, the Court finds that Defendant's search terms were reasonably calculated to uncover all relevant documents even without such Boolean terms. *See Inform* Case, 611 F. Supp. 2d at 1184.

Finally, Plaintiff argues that Defendant's search terms here are less tailored to collect all records from custodians than the past case in which the court held the terms did not meet FOIA standards. Resp. at 28; *Rocky Mountain Wild, Inc.*, 138 F. Supp. 3d at 1221–23. The Court views this argument as similar to Plaintiff's others as it essentially concerns whether Defendant's search terms were reasonably likely to uncover all relevant documents. Defendant's prior search terms may have been deficient which explains why it chose to pursue a different path in this case. As already explained, from the substantial weight afforded to the affidavits, the Court finds that the search terms were reasonable enough to satisfy Defendant's burden, and Plaintiff's arguments have not convinced the Court otherwise.

C.      Search Locations

Plaintiff argues that Defendant's choice of allowing custodians to choose where they searched was unreasonable.  Resp. at 28.  For example, custodians Bunni Maceo and Jason Robertson only did a search of email files.  *Id.*  Moreover, Plaintiff asserts that "there is no evidence of any search of laptops, phones, and other electronic devices that create and obtain electronic agency records."  Resp. at 29.  Defendant responds that its search encompassed laptops and phones that were likely to contain responsive records.  Response/Reply at 45–46.

As with the search terms, the custodians were left to decide what locations would most likely contain potentially responsive documents.  Sloan Decl. ¶¶ 29–30, 32–34; Supp. Sloan Decl. ¶¶ 14-15.  Plaintiff's general argument that this is per se unreasonable is unavailing for the same reasons as with the search terms.  Also, the declarations make clear that work computers, including laptops, were searched by some custodians.  Sloan Decl. ¶¶ 30–32; Supp. Sloan Decl. ¶¶ 15–16.  Based on the submitted affidavits, the laptop computers that were not searched (if they even exist) were not reasonably likely to contain responsive documents.

As for smartphones, Defendant acknowledges that there was no general directive to conduct a search of custodians' smartphones.  Defendant's Response to Cross MSJ and Reply in Support of MSJ ("Response/Reply") at 45–46.  However, not all records custodians even had smartphones assigned by the agency. Supp. Sloan Decl. ¶ 17.  Those that did were synced to the custodian's email (Outlook) account.  *Id.*  Custodians were identified because they were likely to have responsive documents and would know best where those documents would be located.  Plaintiff has not made a showing that a universal search of all custodians' smartphones would reveal additional documents not already captured by Defendant's search.  Thus, the Court is

satisfied that Defendant's allowance of custodians to search where they thought all relevant documents would be has reasonably led to the production of such documents.

>    D.    Date Range

Plaintiff argues that Defendant's "search is *per se* unreasonable, because each search was conducted without a date of search cutoff."  Resp. at 30.  Specifically, Plaintiff avers that Defendant "arbitrarily picked an end of search cutoff date both prior to, and after, the date the custodians searched for records."  *Id.*  In so doing, Plaintiff asserts that Defendant's "declarations are based on speculation that the searches needed to only go back to a beginning cut-of[f] date of May 21, 2015."  *Id.*  Defendant responds that its nearly four-year date range, namely May 22, 2015 to March 1, 2019, was reasonable.  Response/Reply at 48.

As to the beginning cut-off date, Plaintiff acknowledges that "[t]he FOIA request here set the temporal limit as the ending cut-off date used for the November 20, 2014 FOIA request."  Resp. at 31 (citing ECF 49-3 at 2).  Defendant's message to custodians was to search for "all agency communications and records pertaining to the Village at Wolf Creek ANILCA access project and decision from May 22, 2015 through March 1, 2019."  Sloan Decl. ¶ 33.  The searches related to the November 2014 FOIA request were conducted in the fall 2015 and into 2016.  Sloan Decl. ¶ 44.  Hence, the beginning cut-off date here is somewhat more expansive than Plaintiff's request.  Moreover, this case is not the first instance of Plaintiff having received documents concerning this matter.  Plaintiff has previously received a large volume of documents relating to the Wolf Creek project in prior FOIA cases and as part of the administrative record in the prior APA case (the end date for which was May 21, 2015).  Sloan Decl. ¶ 22; Hagen Decl. ¶¶ 5–6.  Plaintiff now wants the Court to issue an order to compel Defendant to conduct a search "to include all previously unreleased agency records created or

obtained since 1983." Resp. at 32. Because the Court finds the beginning cut-off date reasonable, the Court will not issue such an extraordinary order.

As to the end cut-off date, Plaintiff's request sought records concerning the July 2018 Draft ROD and other Wolf Creek-related matters. ECF 52-3 at 1. Defendant initially set the end cut-off date as July 20, 2018 to encompass the Draft ROD. Sloan Decl. ¶ 23. However, Plaintiff objected to that choice of date, after which Defendant extended the cut-off date to March 1, 2019. *Id.* The new date accounted for the Draft ROD and the Final ROD issued on February 29, 2019. *Id.* ¶ 63. Accordingly, all custodians were directed to search through their records for responsive documents through March 1, 2019. *Id.* ¶¶ 33–35. Furthermore, custodians all searched their records even after the March 1, 2019 date. *Id.* ¶¶ 33, 35. Similar to the beginning cut-off date, Plaintiff's arguments do not convince the Court of the unreasonableness of Defendant's choice of temporal scope. Therefore, the Court finds that Defendant has met its burden of reasonableness on the issue of the date range of its search.

## IV.    Exemptions

FOIA specifies nine categories of documents that an agency need not disclose. 5 U.S.C. § 552(b). The agency "bears the burden of demonstrating that [withheld records] fall into one of [FOIA's] enumerated exceptions," which the Court construes "narrowly in favor of disclosure." *World Publ'g Co. v. U.S. Dep't of Justice*, 672 F.3d 825, 826 (10th Cir. 2012).

The FOIA Improvement Act of 2016 ("FIA") limited the circumstances under which an agency may withhold records. "Among other things, the FIA introduced the foreseeable harm standard, which agencies must satisfy for all FOIA requests filed after the bills enactment (June 30, 2016)." *Ctr. for Investigative Reporting v. U.S. Dep't of Labor*, 424 F. Supp. 3d 771, 780 (N.D. Cal. 2019) (emphasis omitted). This standard requires agencies to show that (1) the

agency reasonably foresees that disclosure of the record would harm an interest protected by an exemption, or (2) the disclosure is prohibited by law. 5 U.S.C. § 552(a)(8)(A)(i). "Consequently, even if information falls within the scope of a discretionary exemption, it cannot be withheld from the public unless the agency also shows that disclosure will harm the interest protected by that exemption." *Ctr. for Investigative Reporting*, 424 F. Supp. 3d at 780 (citing *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 375 F. Supp. 3d 93, 98 (D.D.C. 2019)). Here, Defendant has claimed Exemptions 2, 4, 5, and 6, though the Court will address them in a different order.

A.    Whether Defendant Properly Withheld Information Under Exemption 4

Exemption 4 authorizes the withholding of "trade secrets and commercial or financial information obtained from a person and privileged or confidential." *Id.* § 552(b)(4). "'If not a trade secret, for Exemption 4 to apply the information must be (a) commercial or financial, (b) obtained from a person, and (c) privileged or confidential.'" *Brown v. Perez*, 835 F.3d 1223, 1230 (10th Cir. 2016), *as amended on reh'g* (Nov. 8, 2016) (quoting *Anderson*, 907 F.2d at 944 (internal quotations omitted)). In this case, Plaintiff does not seem to specifically contest any of those three factors but instead argues that Defendant has identified no actual harm from disclosing the information withheld. Resp. at 40. Plaintiff's arguments include that "[d]isclosure of [a] work order for an outside firm to carry out a federal function does not fall within Exemption 4[,]" "there is a public interest in the cost of the Forest Service decision to . . . act in concert with LMJV[,]" and "billing records are routinely filed with the Court." *Id.* Plaintiff does not identify or explain how these specific types of information are either not commercial or financial, obtained from a person, or privileged or confidential in the context of this case. Moreover, Plaintiff's Reply focuses on Defendant's failure to show "actual harm." Reply at 27.

As such, the Court will not craft an Exemption 4 argument for Plaintiff as to whether the withheld information was commercial or financial, obtained from a person, or privileged or confidential. The Court only considers whether there is any genuine dispute of material fact as to whether Defendant has demonstrated foreseeable harm in withholding.

The limited number of documents withheld pursuant to Exemption 4 included information regarding "corporate bank account numbers, estimated insurance premiums, and information provided in connection with billing statements from Plaintiff's counsel." Sloan Decl. ¶ 60. Other courts have found agencies acted properly in redacting or withholding similar information. *See Calderon v. U.S. Dep't of Agriculture*, 236 F. Supp. 3d 96, 119 (D.D.C. 2017) (finding bank information properly exempted under Exemption 4). When Defendant withheld the information, the *Vaughn* index specified that this type of information was confidential. *See, e.g.*, Exh. I at 150 ("Email containing confidential commercial information being private phone numbers of no proper use to the public."), 160 ("Documents containing confidential commercial information regarding work order for litigation support related to Wolf Creek litigation."). The Court finds that the *Vaughn* index provides sufficient details to explain and justify the withholdings as to Exemption 4. *See U.S. Dep't of Commerce*, 375 F. Supp. 3d at 98 ("[T]he agency must provide a detailed description of the information withheld through the submission of so-called 'Vaughn index,' sufficiently detailed affidavits or declarations, or both."). Further, the Court finds that Plaintiff's limited contentions as to these exemptions do not overcome the good faith of the submitted declarations. *See Lukas v. Fed. Communications Commission*, No. 20-5082, 2020 WL 5904442, at *1 (D.C. Cir. Aug. 7, 2020). Accordingly, summary judgment is appropriate in favor of Defendant on this Exemption.

**B.**     <u>Whether Defendant Properly Withheld Information Under Exemption 2</u>

Under Exemption 2, an agency may withhold information that relates "solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  Here, Defendant has redacted information concerning internal agency telephone conference numbers and passcodes.  Sloan Decl. ¶ 59.  Defendant asserts that "disclosure of these numbers could allow individuals outside the agency to dial into the agency's telephone conference system and obtain unauthorized access to agency information and disrupt agency operations."  Plaintiff argues that Defendant's proffered reason does not withstand proper scrutiny of Exemption 2 following *Milner*, 562 U.S. at 580.  Defendant does not address this argument in its Response/Reply.  Alternatively, Defendant claims proper exemption under Exemption 5.  Resp. at 39.

In *Milner*, the Supreme Court narrowly construed Exemption 2 in interpreting an agency's "personnel rules and practices" as "dealing with employee relations or human resources."  562 U.S. at 570.  While finding it impossible to craft a comprehensive list of such rules and practices, the Supreme Court noted that "all the rules and practices referenced in Exemption 2 share a critical feature: They concern the conditions of employment in federal agencies—such matters as hiring and firing, work rules and discipline, compensation and benefits."  *Id.*   Exemption 2 covers nothing else.  *Id.*  From this understanding, it is near impossible to see how telephone conference numbers and passcodes would fall under Exemption 2, because that information does not concern conditions of employment in any form.  Noting that Defendant has not addressed this issue, the Court cannot find as a matter of law that Exemption 2 covers the redacted information.  For the information to be properly redacted, then, it must qualify under Defendant's other proffered exception, Exemption 5.

C.    <u>Whether Defendant Properly Withheld Information Under Exemption 5</u>

Exemption 5 allows the agency to withhold from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  Put differently, the exemption "protects documents that would be covered by any privilege that an agency could assert in a civil proceeding."  *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1226 (10th Cir. 2007). Defendant asserts three types of privilege as a basis for withholding under Exemption 5: the attorney-client privilege, the work product protection, and the confidential information privilege.  MSJ at 30–31. Plaintiff does not specifically challenge the withholdings under any particular theory of exemption; in other words, Plaintiff does not argue that Defendant has failed to demonstrate a particular element of the attorney-client privilege, for example.  Instead, Plaintiff makes two general arguments.  First, Defendant has failed to show harm to "the agency's deliberative process."  Resp. at 36 (quoting *Judicial Watch, Inc. v. United States DOJ*, No. 19-cv-800 (TSC), 2020 WL 5798442, at *2 (D.D.C. Sep. 29, 2020)).  Second, Defendant has failed to identify the date, author, recipient, and/or attorney involvement on the *Vaughn* index, and thus the documents should be disclosed.

1.    Harm

Plaintiff's first argument is that Defendant has failed to show the requisite harm that would occur with disclosure of the withheld information.  Specifically, Plaintiff contends that "[i]n addition to the pre-2016 burdens FOIA places on the agency desiring to avoid scrutiny by withholding a document under Exemption 5, an agency must [also now] show that the disclosures of information withheld . . . would harm the agency's deliberative process."  Resp. at 38 (quotation and citation omitted).  Defendant disputes the use of the standard here in which the

deliberative process privilege is not claimed.  Response/Reply at 52.  "[N]early all of the few decisions to have addressed the new foreseeable-harm requirement at any length have done so when considering the Exemption 5 deliberative-process privilege."  *Ctr. for Investigative Reporting v. U.S. Customs and Border Protection*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019).  The question is whether the heightened standard applies here when that privilege is not asserted.  Without deciding whether the standard applies, the Court finds that Defendant has satisfied its showing of harm under it.

To meet the foreseeable-harm requirement, the agency "must 'identify specific harms to the relevant protected interest that it can reasonably foresee would actually ensue from disclosure of the withheld materials' and 'connect[] the harms in [a] meaningful way to the information withheld."  *Id.* (quoting *Judicial Watch v. U.S. Dep't of Justice*, No. 17-0832 (CKK), 2019 WL 4644029, at *5 (D.D.C. Sep. 24, 2019)).  An agency may do so taking "a categorial approach" and grouping "together like records."  *Id.* (quoting *Rosenberg v. U.S. Dep't of Defense,* 342 F. Supp. 3d 62, 78 (D.D.C. 2018)).  If this approach is chosen, the agency cannot rely on boilerplate statements or "generic and nebulous articulations of harm."  *Id.* (citation omitted).

In the original declaration, Defendant averred that disclosure of these documents would "reveal confidential, attorney-client privilege material[,]" Sloan Decl. ¶ 62, and "attorney mental impressions and factual work product[,]" *id.* ¶ 63.  In the supplemental declaration, it was further clarified that the harm to Defendant would be that "[p]ublicizing confidential communications seeking or providing legal advice, or documents otherwise reflecting legal advice, would impede the agency's ability to seek, receive, and rely upon the candid and complete legal advice of OGC and DOJ attorneys."  Supp. Sloan Decl. ¶ 30.  Although the original declaration may fairly be categorized as generic, the Court does not find that the supplemental declaration's explanation is

boilerplate or a generic articulation of harm.  Rather, it is a specific, foreseeable harm that could occur should disclosure happen.  Though Defendant does not connect the harm in a meaningful way to each withheld document individually, it does so in the categorical context of all the withheld documents.  Accordingly, the Court finds that Defendant has satisfied the foreseeable-harm standard, if it even applies.

2.      Sufficiency of Information

In addition, Plaintiff argues that the *Vaughn* index lacks basic information that prevents the application of Exemption 5.  Plaintiff objects that some entries do not have a date, author, recipient, and/or additional attorney involvement listed on the *Vaughn* index.  Plaintiff cites *Buffalo Field Campaign v. United States DOI*, No. CV 19-165-M-DWM, 2020 WL 3790725, at *3 (D. Mont. July 7, 2020) as an example of a court ordering disclosure of documents when such information is not given.

The purpose of providing information on a *Vaughn* index is to, "at the very least, (1) describe with sufficient particularity the nature of the legal issue or issues for which advice was sought; (2) explain whether the communications sought legal advice, conveyed legal advice, or both; and (3) provide evidence that the communications were confidential."  *Ctr. for Biological Diversity v. U.S. Envtl. Protection Agency*, 279 F. Supp. 3d 121, 152 (D.D.C. 2017).

As Plaintiff states, there are instances on the *Vaughn* index in which some pieces of information are not provided.  For example, Entry 480 indicates that the documents are being withheld in part based on work product, but there is no author or recipient identified.  Exh. I at 42.  However, the description is not without specificity.  In the "Basis for Exemption" column, Defendant notes that the document is a draft briefing document for the Wolf Creek Objection Process prepared at the direction of an OGC attorney, "in the context of reasonably foreseeable

litigation regarding the Wolf Creek Project." *Id.* That information, though an author or recipient of the document is not identified, is sufficient to demonstrate the nature of the issue and the type of legal work. The supplemental declaration shows that such documents and communications were also confidential. Supp. Sloan Decl. ¶ 29 ("OGC and DOJ attorneys regularly provide legal advice to the agency, and documents and communications seeking or reflecting legal advice are generally kept confidential."). Accordingly, the Court finds that such an entry satisfies the Court of the use of the applicable privilege.

Plaintiff does not single out any entries as particularly egregious, arguing instead that the over 4,100 entries lacking some information are all deficient. As the desired remedy, Plaintiff requests for the disclosure of all those documents. Resp. at 37–38. Given the volume of entries, the Court did not examine in depth all allegedly deficient entries for potential issues (especially since Plaintiff did not direct the Court to any in particular). The Court did do a random spot-check of entries and found those to be similar to Entry 480. *See, e.g.*, Exh I. at 6 (entry 58), 51 (entry 563), 117 (entry 1205), 257 (entry 2672), 402 (entry 3926), 483 (entry 4761), 716 (entry 6796). Regardless, the Court finds that Defendant's affidavits and *Vaughn* index "are reasonably clear, specific, and detailed." *Rocky Mountain Wild, Inc.*, 138 F. Supp. 3d at 1223. As such, the "agency's determination that particular documents fall within the scope of a FOIA exemption is generally accorded substantial weight." *BLM* Case, 455 F. Supp. 3d at 1030. Thus, in general, the Court finds that the substantial weight afforded to the *Vaughn* index entries along with the spot-check conducted by the Court satisfies the Court that Defendant has met its Exemption 5 burden here.

### 3.     Confidential Information

As described earlier, Defendant asserts that the telephone conference line numbers and access codes can be withheld pursuant to Exemption 5.  The Supreme Court has endorsed "a limited privilege for confidential commercial information pertaining to [government] contracts." *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 359 (1979).  The First Circuit has extended that endorsement to include "protect[ing] the government when it enters the marketplace as an ordinary commercial buyer or seller."  *Gov't Land Bank v. Gen. Servs. Admin.*, 671 F.2d 663, 665 (1st Cir. 1982). Under this authority, Defendant redacted conference call numbers and passcodes, the disclosure of which, it says, would "harm the government's financial interest in maintaining the integrity of the commercial telephonic systems it contracts for."  Response/Reply at 51; Sloan Decl. ¶ 64.

Plaintiff urges the Court to find that Exemption 5 cannot apply to this information since there is no textual basis in the statute to do so.  Resp. at 39–40.  In the *BLM* Case, the court found that Exemption 5 can apply to this information under the authority of the caselaw cited above. Plaintiff does not directly address that law, and the Court finds no reason to depart from the holding in the *BLM* Case.  Therefore, Defendant is entitled to summary judgment on the intra-agency telephone conference numbers and access codes under Exemption 5.

### D.     Whether Defendant Properly Withheld Information under Exemption 6

Exemption 6 of FOIA protects information about individuals in "personnel and medical files and similar files" when such disclosure would "constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  "Similar files" is construed broadly to include "detailed Government records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982).  In considering the application of

Exemption 6, courts balance the privacy interests of the persons whose information would be released versus the public interest the requestors show.  *See, e.g.*, *Sheet Metal Workers Intern. Ass'n Local No. 9 v. U.S. Air Force*, 63 F.3d 994, 997 (10th Cir. 1995).

In this case, Defendant redacted information regarding "individuals' home addresses, personal telephone numbers, personal email addresses, usernames and passwords, and taxpayer identification numbers."  Sloan Decl. ¶ 66.  Defendant asserts that this information "would serve little to no public interest[ ] and would constitute an unwarranted invasion of the individuals' privacy."  *Id.*  Plaintiff responds that Defendant has not demonstrated a specific harm to withholding this information.  Resp. at 41.  Additionally, Plaintiff argues that Exemption 6 only protects such information in personnel, medical or similar files, not in agency emails.  *Id.* at 42.

As to Plaintiff's contention that Exemption 6 does not apply here because there is no personnel or medical file at issue, "[t]he case law is to the contrary."  *BLM* Case, 445 F. Supp. 3d at 1366.  Courts have "read the statute to exempt not just files, but also bits of personal information, such as names and addresses, the release of which would create a palpable threat to privacy."  *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F. 3d 141, 152 (D.C. Cir. 2006) (internal quotation marks omitted).  Hence, to determine if disclosure "would constitute a 'clearly unwarranted invasion of personal privacy,' the Court must balance the 'privacy interest in non-disclosure against the public interest in the release of the records.'"  *Hall & Associates v. United States Environmental Protection Agency*, No. 19-1095 (RC), 2020 WL 4673411, at *3 (D.D.C. Aug. 12, 2020).  The Court finds that Defendant, despite Plaintiff's contention to the contrary, has articulated a legitimate reason for foreseeable harm in the release of this information.  *See* Sloan Decl. ¶ 66 ("unwarranted invasion of the individuals' privacy").  The Court must balance this interest with any public interest in disclosure.

Plaintiff argues that the disclosure of this information can "provide direct evidence as to who was involved in the agency communications, and whether non-agency personnel were involved in agency deliberations."   Resp. at 42. The Court recognizes that sometimes the information that would fall under Exemption 6 could, "when read in context, . . . actually add to the plaintiff's knowledge of the government's activities."  *Electronic Privacy Info. Ctr. v. Dep't of Homeland Security*, 384 F. Supp. 2d 100, 118 (D.D.C. 2005).  Even so, the Court does not find that such an interest overrides the personal privacy interest since the redactions at issue only concern *personal* information.  *See, e.g.*, Exh. I at 42 ("Email containing personally identifying information about an individual, specifically, personal email addresses), 356 ("Email chain containing personally identifying information about individuals, specifically, personal addresses . . .").  Given the substantial weight afforded to Defendant's affidavits, the Court finds that the redaction of such *personal* information would cause an unwarranted invasion of personal privacy that is not overcome by any public interest in such information.  *See Reporters Comm. for Freedom of Press*, 489 U.S. at 773 ("Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose"; however, that purpose "is not fostered by disclosure of information about private citizens that is accumulated in various governmental files [ ] that reveals little or nothing about an agency's own conduct.").  Plaintiff has not overcome the affidavits' good faith, so the Court finds that Defendant has met its burden as to Exemption 6.  Accordingly, Defendant is entitled to summary judgment on this issue.

## **CONCLUSION**

For the reasons explained herein, the evidence supplied by Defendant has satisfied its burden of conducting a reasonable search and justifying nondisclosure of certain documents.

Accordingly, Plaintiff's Cross Motion for Summary Judgment [filed October 30, 2020; ECF 53] is **denied,** and Defendant's Motion for Summary Judgment [filed September 11, 2020; ECF 49] is **granted**.

Entered and dated at Denver, Colorado, this 4th day of March, 2021.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge